**Thomas H. KELLY, Plaintiff,**

v.

**AMERICAN FEDERATION OF MUSI-CIANS' AND EMPLOYERS' PENSION WELFARE FUND, Defendant.**

**No. 84 Civ. 0227 (KTD).**

United States District Court, S.D. New York.

Jan. 3, 1985.

Thomas H. Kelly, plaintiff, pro se.

Simpson, Thacher & Bartlett, New York City, for defendant; J. Scott Dyer, New York City, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

*Pro se* plaintiff, Thomas H. Kelly ("Kelly"), brings this "reverse" employment discrimination action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and The Civil Rights Act of 1866, 42 U.S.C. § 1981 against defendant, American Federation of Musicians' and Employers' Pension Welfare Fund (the "Fund"), alleging he was terminated from his employment because of his race. Defendant moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure on the ground that Kelly offers no evidence which would tend to rebut the Fund's showing that the discharge was based entirely on non-discriminatory reasons. Defendant also seeks costs and attorney's fees.

Plaintiff, a white male, was hired by the Fund in September of 1980 to work as a Pension Clerk. His duties included determining the level of contributions made into the Fund on behalf of the musicians and what, if any, pension benefits they were

entitled to. Eli Quintero, the Supervisor of the Pension Department, oversaw Kelly's work.

After a few months, Kelly was told by Quintero that there had been complaints by musicians who had not received their correct pension benefits. Kelly was instructed to check the proper source material, something he admits he failed to do at times. In the ensuing months, Kelly repeatedly made errors which had to be corrected by others. In the summer of 1982, he was admonished both privately and later with others "to be more careful in ... work" because there were complaints by the musicians about the number of errors being made. Transcript of Deposition of Thomas H. Kelly, dated May 15, 1984 ("Tr."), 40, 41.

In August 1982, Kelly prepared a document which did not include contributions for the years 1959 through 1964. As a result, someone else had to insert these figures. Kelly admitted his negligence at his deposition:

Q: Would checking the book from 1959 to 1964 be one of the first steps you would take in preparing the work sheets?
A: Definitely.
Q: And for whatever reason, you didn't check these books in this particular case; is that correct?
A: Yes. I might have checked and just missed it.

\* \* \* \* \* \*

Q: But these are adjustments that were caught by someone other than you?
A: That's right.

Tr. at 63, 64.

In November 1982, Kelly failed to correct an entry on a worksheet he was supposed to update. On November 15, 1982, he again met with Quintero who once more stated that the musicians were complaining about errors. Kelly did not dispute that he was making these errors, but simply said that he would attempt to cut down on them. Tr. at 41–43. Finally, on November 24, 1982, Kelly was informed that he was being discharged because of his poor work

performance and complaints by the musicians. Kelly's position was then refilled by Steven Carter, also a white male.

In late November, 1982, Kelly filed a discrimination charge against defendant with the Equal Employment Opportunity Commission ("EEOC"). The EEOC referred the matter to the New York State Division of Human Rights ("NYSDHR") which, after an investigation, dismissed the charge finding that there was no probable cause that the Fund discriminated against plaintiff. The EEOC subsequently adopted the NYSDHR's decision. Kelly then timely filed the instant action alleging racial and religious discrimination. By Endorsement dated March 21, 1984, I dismissed that part of plaintiff's claim which charged religious discrimination because, *inter alia*, it was not alleged in the EEOC complaint.

## DISCUSSION

■ On a summary judgment motion, the moving party has the burden of proving that there exists no genuine issue as to any material fact and the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Given that all of the facts stated above are fully supported by Kelly's deposition and have not been contradicted by Kelly in the papers he has submitted, it is clear that there is no dispute as to any material facts. In response to defendant's evidentiary support of its motion for summary judgment, it is incumbent on plaintiff to come forward with "suitable opposing affidavits." *Id.* at 160, 90 S.Ct. at 1609. Absent factual corroboration, I am unable to consider plaintiff's conclusory statements in his two letters to me as sufficient to rebut defendant's showing.

■ In *Texas Department of Community Affairs v. Burdine,* the Supreme Court analyzed its seminal opinion in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and restated the plaintiff's and defendant's bur-

dens in a Title VII discrimination action.[1] The Court stated:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination ... [Note, however, that the] ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (citations omitted).[2]

The elements necessary to satisfy plaintiff's initial burden of establishing a *prima facie* case of discriminatory discharge are as follows:

> (1) that the plaintiff was a member of a minority; (2) that he was qualified for the job he was performing; (3) that he was satisfying the normal requirements of his work; (4) that he was discharged; and (5) that after his discharge he was replaced by a non-minority employee.

*Said v. Institute of International Education, Inc.*, 29 Empl.Prac.Dec. (CCH) ¶ 32,-751, at 25,534 (S.D.N.Y.1982) (citations omitted).

■ In the light of these general principles, I must conclude that defendant is entitled to summary judgment because it has sustained its burden of proving that there are no issues of disputed material fact and that it is entitled to judgment as a matter of law. It is apparent that the third and fifth elements articulated in *Said* are unsupported by the facts and cannot be established. First, Kelly admits that he repeatedly made errors which had to be corrected by others and which resulted in numerous complaints from musicians. These incidents led to several admonishments from his superior, Mr. Quintero, that Kelly had to be more careful in his work. Kelly, however, continued to make errors. Second, defendant replaced plaintiff with another white male, Steven Carter.

In addition, assuming plaintiff could make out a *prima facie* case, the Fund's articulation of a "legitimate, nondiscriminatory reason for [Kelly's] rejection"—his inadequate performance as a pension clerk—shifts back to plaintiff the burden of showing that this reason was merely a pretext for discrimination. Pretext may be established by showing: (1) [proof that employees of other races] with similarly poor work performances or employment records were retained while plaintiff was not; (2) statistical evidence showing that the employer had a pattern or practice of discrimination against persons of plaintiff's race ...; and/or (3) direct evidence of subjective in-

---

**1.** The criteria for proving a section 1981 discrimination case is the same as that used to prove a case under Title VII. *See Hudson v. International Business Machines Corp.*, 620 F.2d 351, 354 (2d Cir.), *cert. denied*, 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611 (1980).

**2.** It should be noted at the outset that a white male has the same right to bring a Title VII action as does any other person. Section 703(a)(1) of Title VII provides in pertinent part:

> (a) It shall be an unlawful employment practice for an employer—
> (1) ... to discharge *any* individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because

of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a)(1) (emphasis supplied). After examining the text and legislative history of the statute, the Supreme Court held that "Title VII prohibits racial discrimination against ... white petitioners ... upon the same standards as would be applicable were they Negroes...." *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 280, 96 S.Ct. 2574, 2578, 49 L.Ed.2d 493 (1976). Thus, given the fact that the same principles apply to all Title VII actions, regardless of the race or sex of the plaintiff, I will now discuss what those standards are and whether, pursuant to those standards, defendant is entitled to summary judgment.

tent. *Wade v. New York Telephone Company,* 500 F.Supp. 1170, 1177–78 (S.D.N.Y. 1980). Plaintiff is unable to show any of the above. With respect to the first method of proving pretext, Kelly alleges that he was terminated while other employees with similar work records were simply transferred to other departments. However, his testimony at his deposition clearly indicates that these other employees he is referring to included whites, Hispanics, and blacks. Tr. at 77–81, 95–97.

Q: Are there any other specific facts on which you base your position that you were terminated on account of your race?

A: I guess I said everything that I feel is relevant. When you add all these facts up, I feel it does amount to discrimination. Specifically, the most general factors are all the people that were terminated before me or transferred or whatever, there [sic] were given numerous changes and I wasn't even asked if I would like to work in the order department—

Q: And those other people you are referring to would refer to white, black and Hispanic employees as well?

A: Yes.

Q: So the essence of your claim is that you felt you were treated unfairly from what other employees of the Fund, really regardless of their race, received?

A: Yes.

Tr. at 96, 97. Thus, by Kelly's own admission, his failure to be transferred and his discharge were not racially motivated.

With regard to the second and third methods of proving pretext, Kelly has come forward with no statistical evidence of a pattern of discrimination nor has he produced any direct evidence of a subjective intent to discriminate. Consequently, the inescapable conclusion is that the reason given by the Fund for discharging Kelly was legitimate and not merely a pretext for discrimination.

Accordingly, as plaintiff has failed, in opposition to defendant's summary judgment motion, to submit any evidence to support his allegation of discrimination, defendant's motion is granted and plaintiff's case is dismissed. Defendant's request for costs and attorney's fees is denied.

SO ORDERED.