**Loretta TORRIERO, Plaintiff,**

**v.**

**OLIN CORPORATION, Ernest Obrig, and Chandru Manghnani, Defendants.**

**No. 83 CIV. 1097 (SWK).**

United States District Court, S.D. New York.

Jan. 29, 1988.

Giamboi, Reiss & Squitieri by Joseph N. Giamboi, New York City, for Loretta Torriero.

Epstein, Becker & Green, P.C. by Dennis A. Lalli, New York City, for Olin Corp., Ernest Obrig and Chandru Manghnani.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiff Loretta Torriero, a former employee of defendant Olin Corporation ("Olin") brings suit seeking damages against Olin and two of its employees alleging violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Defendants move to strike plaintiff's attorney's affidavit of March 2, 1987 pursuant to Fed.R.Civ.P. 56(e) and for summary judgment pursuant to Fed.R.Civ.P. 56(c). For the reasons set forth below, defendants' motion is granted.

## FACTS

*The Undisputed Facts*

Plaintiff Loretta Torriero was initially employed by Olin in July 1979 as an administrative secretary at Olin's Stamford, Connecticut facility. In May 1980, plaintiff was promoted to the position of customer service representative in Olin's customer service department. While working in this position, all of plaintiff's co-workers were female. Defendant Chandru Manghnani was Olin's customer service manager in which capacity he supervised plaintiff. Defendant Manghnani reported to defendant Ernest Obrig, Olin's director of customer service.

In April 1981, defendant Manghnani met with plaintiff to discuss the results of her job performance over the past year. Manghnani reviewed plaintiff's work performance utilizing Olin's Results Review, Planning and Performance ("RRPP") procedure. The RRPP procedure requires Olin's supervisors to rate the subordinate's performance during the preceding year and to discuss the evaluation with the subordinate. At plaintiff's review, defendant Manghnani warned plaintiff about her tardiness in reporting to work, her excessive use of corporate telephones for personal calls, her lack of interpersonal skills, and her high error rate in processing customer orders. Plaintiff stated that she felt that her rating for the year should have been "superior." Defendant Manghnani disagreed with plaintiff and intended to rate plaintiff's performance as "fair." (Olin's RRPP procedure had yet another rating of "fully competent" that fell between "fair" and "superior"). Due to the magnitude of difference between the respective assessments, Manghnani did not rate plaintiff's overall performance during that review session. Manghnani did discuss with plaintiff some goals for her to accomplish within the next few months.

Approximately two months later on June 19, 1981, defendant Manghnani placed plaintiff on probation. On September 8, 1981, plaintiff was terminated from her employment with Olin by defendant Ernest Obrig. Also on September 8, 1981, plaintiff met with Ms. Toni Cice, Olin's personnel manager, for an exit interview. During that interview, plaintiff told Ms. Cice that she felt that there were "other reasons" than those articulated by her supervisors for her discharge. When Ms. Cice asked plaintiff what she meant, plaintiff refused to explain or elaborate upon her statement. Plaintiff mentioned neither sex discrimina-

tion nor sexual harassment during her exit interview with Ms. Cice. Olin maintains a nondiscrimination policy, dated July 28, 1980, which addresses sexual harassment and provides avenues to report such activity.

On March 11, 1982, 184 days after her termination, plaintiff filed a sex discrimination charge against Olin Corporation with the New York office of the Equal Employment Opportunity Commission ("EEOC"). Her charge alleged that because of her sex, plaintiff's telephone calls and times of arrival were monitored by Olin, that she was denied a transfer or promotion, and that she was placed on probation and finally terminated by Olin. Her charge did not allege sexual harassment and the charge named only Olin Corporation and neither Chandru Manghnani nor Ernest Obrig. On April 15, 1982, 219 days after plaintiff's termination, the EEOC transferred plaintiff's charge to the Connecticut Commission on Human Rights ("CHRO"). The CHRO took no action on plaintiff's charge.

On November 8, 1982, the EEOC issued plaintiff a Notice of Right To Sue because it determined that there was no reasonable cause to believe that plaintiff's allegations were true. The Notice formally notified plaintiff that if she wished to pursue the matter further, she had a statutory right to file a private action in a federal district court within 90 days of receipt of the Notice.[1] Plaintiff subsequently brought suit in federal district court on February 10, 1983, 94 days after issuance of the Notice of Right to Sue.[2]

On October 10, 1984, this Court dismissed plaintiff's suit for failure to respond on a timely basis to defendants' first summary judgment motion. Subsequently, on April 22, 1986, this Court reopened the case by granting plaintiff's motion to vacate its default judgment pursuant to Fed.R.Civ.P. 60(b)(1) and (6).[3]

Upon reopening of the case, defendants made a second summary judgment motion. Plaintiff's attorney filed his own affidavit in opposition to defendants' motion for summary judgment. The better part of plaintiff's attorney's affidavit described the merits of Ms. Torriero's sexual harassment claim against the defendants. Defendants responded by moving to strike the attorney's affidavit based on Fed.R.Civ.P. 56(e) because it contained no statements based on personal knowledge and belief. In response, plaintiff submitted her own affidavit in opposition to defendants' summary judgment motion. Plaintiff's attorney attached his own affidavit to plaintiff's affidavit explaining that he submitted his first affidavit in place of plaintiff's affidavit because he could not locate plaintiff in time to avoid another default judgment.

*The Disputed Facts*

Plaintiff alleges both sexual discrimination by defendant Olin and sexual harrassment by defendants Manghnani and Obrig. Plaintiff maintains that defendant Manghnani sexually harassed her over a period of several months beginning in the summer of 1980. The offensive conduct included propositions for sexual intercourse, the use of obscene language by Manghnani in plaintiff's presence, and threats to plaintiff's future advancement within the organization should she fail to accede to Manghnani's sexual demands.

In the winter of 1980, plaintiff alleges that she complained to defendant Obrig, Manghnani's supervisor, about Manghnani's conduct. Plaintiff states that Obrig did not take her complaint seriously and indicated that Manghnani was new to management and that he needed time to

---

**1.** The issuance of a Notice of Right To Sue terminates the EEOC's processing of a discrimination charge. Pursuant to 42 U.S.C. § 2000e–5(f), the complainant has 90 days from receipt of the Notice to thereafter pursue her claim further in federal district court.

**2.** The parties' affidavits do not reveal when plaintiff *received* a copy of the EEOC Notice of Right to Sue. Thus, it is not possible to deter-

mine from the record whether defendants could have asserted plaintiff's failure to file her action within 90 days as a defense.

**3.** Plaintiff's current attorney explained that plaintiff's failure to respond to defendants' second summary judgment motion was due to the ill health of the associate initially handling plaintiff's case.

adjust. Plaintiff did not pursue her complaint further. ·

Plaintiff also alleges sexual harassment by defendant Obrig. Prior to her promotion to customer service representative in May 1980, plaintiff claims that defendant Obrig made a series of sexual propositions to plaintiff. The harassment included requests for sexual relations by Obrig, offensive touching of plaintiff's legs and threats such that Ms. Torriero's future advancement was linked to "favors" she performed for Obrig and unspecified others. Plaintiff thereafter complained to defendant Manghnani regarding Obrig's conduct. Defendant Manghnani allegedly told plaintiff that Obrig had it out for plaintiff and that she should watch herself around Obrig.

Both defendants Manghnani and Obrig deny plaintiff's sexual harassment allegations. All defendants maintain that plaintiff was terminated from her employment with Olin solely due to her inadequate job performance.

## DISCUSSION

### Motion To Strike Affidavit

■ As this case involves a motion to strike a defective affidavit pursuant to Rule 56(e) within the larger summary judgment motion, the Court must first decide the Rule 56(e) issue. Defendants contend that plaintiff's attorney's affidavit of March 2, 1987 submitted in opposition to defendants' summary judgment motion should be stricken because it was not based on the personal knowledge of the affiant as required by Rule 56(e).

Rule 56(e) requires that
[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissable in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

■ On a motion for summary judgment, an affidavit filed by a person who serves as an attorney for one of the parties and which was not based on personal knowledge violates Rule 56(e). *See In re*

*Teltronics Services, Inc.*, 762 F.2d 185, 192 (2d Cir.1985); *United States v. Bosurgi*, 530 F.2d 1105, 1111 (2d Cir.1976). However, the submission of an additional affidavit by the plaintiff is sufficient to cure the defect in the attorney's affidavit. *Liberty Curtin Concerned Parents v. Keystone Cent. School Dist.*, 81 F.R.D. 590, 604 (D.C.Pa.1978). Thus, here, plaintiff Torrierro's submission of her own affidavit in opposition to the summary judgment motion is sufficient to cure the clear defects of her attorney's earlier affidavit.

### Motion for Summary Judgment

Defendants move for summary judgment on plaintiff's claims on the following grounds: plaintiff allegedly failed to file a timely sexual discrimination charge with the EEOC; plaintiff allegedly failed to allege sexual harassment in her EEOC charge; plaintiff failed to notify her employer of the alleged sexual harassment by Manghnani and Obrig; plaintiff allegedly failed to establish a prima facie case of sexual discrimination; and plaintiff failed to name Manghnani and Obrig as respondents in her EEOC charge.

### Timeliness of EEOC Charge

■ Defendants allege that plaintiff failed to file a timely charge with the EEOC thus precluding her federal claim here. Section 2000e–5(c) of Title 42 of the United States Code expressly provides that where the unlawful employment practice is alleged to have occurred in a deferral State which has a law prohibiting the alleged practice and in which an agency has been established to enforce that law "no charge may be filed [with the EEOC] ... [prior to] the expiration of sixty days after proceedings have been commenced under the State ... law, unless such proceedings have been earlier terminated...." In addition, in a deferral State, a complainant need only file her charge with the State agency within 240 days of the alleged discriminatory employment practice in order to insure that her federal rights will be preserved. *Mohasco Corp. v. Silver*, 447 U.S. 807, 814 n. 16, 100 S.Ct. 2486, 2491 n. 16, 65 L.Ed.2d 532 (1980). When a charge is filed with the

EEOC prior to exhaustion of state remedies, state proceedings may be initiated by the EEOC acting on behalf of the complainant rather than by the complainant herself. *Love v. Pullman Co.*, 404 U.S. 522, 525, 92 S.Ct. 616, 618, 30 L.Ed.2d 679 (1972). "Upon termination of the state proceedings or expiration of the 60 day deferral period, whichever comes first, the EEOC automatically assumes concurrent jurisdiction of the complaint." *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 64, 100 S.Ct. 2024, 2031, 64 L.Ed.2d 723 (1980), (citing *Pullman, supra*, 404 U.S. at 526, 92 S.Ct. at 618).

■ In the instant case, plaintiff was terminated from her employment on September 8, 1981. She filed her discrimination charge with the EEOC on March 11, 1982, 184 days later. The EEOC forwarded this charge to the CHRO on April 15, 1982, 219 days after plaintiff's termination. Accordingly, the Court finds that proceedings were initiated with the CHRO within the requisite 240 day period, and thus, plaintiff's Title VII claim is preserved.

### Failure to Allege Sexual Harassment in the EEOC Charge

■ The scope of a complaint in a Title VII suit is generally defined not by the four corners of the prior administrative charge, but is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. *Silver v. Mohasco Corp.*, 602 F.2d 1083, 1090 (2d Cir.1979), *rev'd on other grounds*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980); *Smith v. American President Lines, Ltd.*, 571 F.2d 102, 107 n. 10 (2d Cir.1978); *Koster v. Chase Manhattan Bank*, 554 F.Supp. 285, 287 (S.D.N.Y.1983). Moreover, the complaint in a civil action may properly encompass any discrimination similar to or reasonably related to the charges filed with the EEOC. *Oubichon v. North Am. Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir.1973); *Danner v. Phillips Petroleum Co.*, 447 F.2d 159, 162 (5th Cir.1971); *Davis v. Buffalo Psychiatric Ctr.*, 613 F.Supp. 462, 468, *vacated on other grounds*, 623 F.Supp. 19

(W.D.N.Y.1985). However, the civil complaint may not include new and unrelated types of discrimination. *Clements v. H. Goodman & Sons, Inc.*, 25 F.E.P. Cases 511, 512 (N.D.Ga.1981).

■ In the instant case, plaintiff's EEOC complaint alleges that because of her sex, plaintiff's telephone calls and times of arrival to work were monitored by Olin, that she was denied a transfer or promotion, and that she was finally placed on probation and terminated. The current claim of sexual harassment was not stated in plaintiff's EEOC charge. As such, plaintiff's sexual harassment complaint is not inferable in this action. Given the nature of her charge before the EEOC—focusing on allegations of sexual discrimination in promotion, transfer and termination—the alleged sexual harassment would not likely have been revealed absent a specific complaint by plaintiff. Having failed to raise such charge before the EEOC, plaintiff may not now raise her claim of sexual harassment.

Defendants' motion for summary judgment on plaintiff's sexual harassment claims is thus granted and this claim is dismissed. Because summary judgment is granted dismissing plaintiff's sexual harassment claims, the Court will not reach plaintiff's contention that these claims should be dismissed due to plaintiff's alleged failure to notify Olin of the alleged sexual harassment.

### Establishing a Prima Facie Case of Sex Discrimination

A plaintiff alleging sexual discrimination in violation of Title VII must initially prove that the employer treats some people less favorably than others because of their race, color, religion, sex or national origin. *See generally Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978); *McDonnell–Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). In *Texas Dept. of Community Affairs v. Burdine*, the Supreme Court restated and reaffirmed its earlier ruling in *Green, supra*, regarding plaintiff's and defendant's

respective burdens in a Title VII discrimination suit. The Court stated that

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employer's rejection.' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination....

450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

The elements necessary to satisfy plaintiff's initial burden of establishing a prima facie case of discriminatory discharge require that plaintiff show that she was: a member of a protected minority group; was qualified for the job she was performing; was satisfying the normal work requirements of her job; was discharged; and that plaintiff was, after her discharge, replaced by a non-minority employee. *Kelly v. American Fed. of Musicians' and Emp. Pension Welfare Fund*, 602 F.Supp. 22, 24 (S.D.N.Y.), *aff'd without opinion*, 795 F.2d 79 (2d Cir.1985); *Said v. Institute of Int'l Education, Inc.*, 36 F.E.P. Cases 1793, 1798 (S.D.N.Y.1982).

Plaintiff fails to satisfy the third and fifth elements articulated in *Kelly*. First, plaintiff admits that she was tardy on various occasions in reporting to work and that she did commit repeated errors in processing customer orders. These incidents led to admonishments from her supervisor, defendant Manghnani. Plaintiff, however, continued to make errors and to report late to work. Second, Olin assigned plaintiff's work responsibilities to another female customer service representative, Melissa Brinkley, upon plaintiff's dismissal. Indeed, plaintiff admits that *all* of the employees in her job category during the time of her discharge were female.

Assuming *arguendo* that plaintiff could make out a prima facie sex discrimination claim, Olin's articulation of a "legitimate, nondiscriminatory reason for [plaintiff's] rejection"—her inadequate job performance—shifts the burden back to plaintiff to show that this reason was merely a pretext for discrimination. *Burdine, supra*, 450 U.S. at 252–53, 101 S.Ct. at 1093–94. Pretext may be shown by: proof that employees of another gender with similarly poor performance records were retained while plaintiff was not; statistical evidence showing that the employer had a pattern or practice of discrimination against persons of plaintiff's gender; and/or direct evidence of subjective intent to discriminate. *Wade v. New York Tel. Co.*, 500 F.Supp. 1170, 1177–78 (S.D.N.Y. 1980).

Plaintiff has not shown any of the above factors. First, plaintiff alleges that she was terminated while other employees with similar work records were not terminated. Plaintiff makes bald conclusory statements on this issue without objective proof of her allegation. With regard to the second and third methods of proving pretext, plaintiff has failed to come forward with statistical evidence of a pattern of discrimination nor has she produced evidence of a subjective intent to discriminate. The inescapable conclusion is that the reason given by Olin for plaintiff's termination were legitimate and not merely a pretext for discrimination.

Defendants' motion for summary judgment dismissing plaintiff's sex discrimination claim is thus granted on this basis. In light of this decision, the Court will not reach the issue of whether summary judgment should be granted dismissing plaintiff's claims because of her failure to name Manghnani and Obrig as respondents in her EEOC charge. Regarding defendants' request for attorney's fees, the Court, exercising its discretion, declines to make such an award. Although the Court finds plaintiff's claims to be meritless, it does not necessarily follow that her claims were made in bad faith. Accordingly, defendants' request for attorney's fees is denied. *See Creusot-Loire Int'l, Inc. v. Coppus*

*Engineering Corp.*, 585 F.Supp. 45, 52 (S.D.N.Y.1983).

## CONCLUSION

Summary judgment is granted dismissing each of plaintiff's claims. Plaintiff's complaint is thus dismissed.

SO ORDERED.