John L. BROOKS, et al., Plaintiffs,

v.

HILTON CASINOS, INC., et al., Defendants.

No. CV-S-84-436-RDF.

United States District Court, D. Nevada.

March 17, 1989.

John C. McCarthy, Inc. by John C. McCarthy and Mary F. Richardson, Claremont, Cal., and Brian K. Berman, Las Vegas, Nev., for plaintiffs.

Robert T. Olmos and Delores Luciano, Los Angeles, Cal., for EEOC.

Seyfarth, Shaw, Fairweather & Geraldson by Raymond Kelly, Chicago, Ill., Seyfarth, Shaw, Fairweather & Geraldson by Keith A. Hunsaker, Georgeanne Henshaw and Renee Turkell, Los Angeles, Cal., and Lionel, Sawyer & Collins by Cam Ferenbach, Las Vegas, Nev., for defendants.

## MEMORANDUM DECISION

ROGER D. FOLEY, District Judge.

### ISSUE

This memorandum concerns plaintiffs' (37 former dealers and floormen of the Defendant Hilton Casinos, Inc.) claim that they were discharged in violation of Title VII of the 1964 Civil Rights Act. Specifically, Plaintiffs claim that Hilton terminated their employment on September 3, 1983 because of their sex, an act prohibited by 42 U.S.C. 2000e–2(a)(1). All 37 Plaintiffs are male. Of the 37 replacements hired by Hilton, 24 were female and 13 were male.[1]

1. Below is the list of the name and ages of the terminated plaintiffs and the corresponding names, ages and sex of the replacements hired by Hilton, all as of September 3, 1983.

**PLAINTIFFS**

| NAME | AGE |
| --- | --- |
| Amie, F. | 35 |
| Ballard, N. | 48 |
| Bosarge, J. | 52 |
| Brooks, J. | 45 |
| Dawson, R. | 44 |
| Delling, D. | 49 |
| Drake, A. | 36 |
| Dudley, R. | 43 |
| Foltz, D. | 48 |
| Gasson, R. | 55 |
| Gill, H. | 44 |
| Grace, D. | 41 |
| Hineline, J. | 55 |
| Jodra, V. | 56 |
| Kustudia, M. | 43 |
| Landers, J. | 39 |
| McDonough, J. | 45 |
| Meranto, R. | 59 |
| Mikitaroff, J. | 53 |
| Mitchell, N. | 56 |
| Navarro, J. | 47 |
| Neill, E. | 48 |
| Newman, T. | 39 |
| Penny, D. | 53 |
| Pintaone, A. | 51 |
| Pollins, J. | 32 |
| Prewitt, W. | 48 |
| Rexroad, P. | 40 |
| Rodriguez, V. | 66 |
| Saunto, J. | 50 |
| Shailer, J. | 65 |
| Stanford, M. | 45 |
| Sterling, J. | 59 |
| Torres, J. | 47 |
| Vanstrom, K. | 41 |
| Williams, V. | 55 |
| Zarro, T. | 67 |

**NEW HIRES**

| NAME | AGE | SEX |
| --- | --- | --- |
| Johnson, D. | 36 | M |
| Bradford, J. | 21 | F |
| Kaphengst, U. | 39 | F |
| Jewett, J. | 27 | F |
| Carrillo, M. | 34 | F |
| Lenoci, W. | 27 | F |
| Felton, W. | 30 | F |
| Whitehead, J. | 31 | M |
| Zappulla, J. | 29 | M |
| Forwood, M. | 29 | F |
| Morales, M. | 35 | M |
| Jones, E. | 35 | M |
| Hansen, M. | 33 | F |
| Maynor, T. | 27 | M |
| Ureno, P. | 29 | F |
| Grogan, C. | 34 | F |
| Myers, B. | 37 | F |
| Dunlop, M. | 28 | F |
| Baldasarro, S. | 28 | F |
| Taylor, R. | 32 | M |
| Hufft, K. | 28 | F |
| Bricker, G. | 28 | F |
| Zimmerman, R. | 35 | F |

(These numbers are based upon Hilton's new hire slips which designate who the new employee replaced). This court finds that under both the disparate treatment and disparate impact theories that Hilton discharged the plaintiffs in violation of 42 U.S.C. sec. 2000e–2(a)(1).

## DISCUSSION

The U.S. Supreme Court stated in *Johnson v. Railway Express Agency*, 421 U.S. 454, 457, 95 S.Ct. 1716, 1719, 44 L.Ed.2d 295, 300 (1975):

> Title VII of the Civil Rights Act of 1964 was enacted "to assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin." Citing from *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, [94 S.Ct. 1011], 39 L.Ed.2d 147 (1974).

Specifically, 42 U.S.C. sec. 2000e–2 prohibits discriminatory discharges based upon sex. Subsection (a)(1) states:

> It shall be an unlawful employment practice for an employer—
> to fail or refuse to hire or *to discharge* any individual ... because of such individual's race, color, religion, sex, or national origin. (Emphasis added).

Understandably, the normal situation in which a Title VII claim arises is where the plaintiff is a female or the plaintiff is a member of a recognized minority, such as a black person. Indeed, in the seminal case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677 (1973), the Supreme Court, discussing the disparate treatment theory of discrimination, described the plaintiff's prima facie case using language that applied specifically to minorities.

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

In spite of this language which tends to apply only to recognized minorities, Title VII has been recognized to apply towards *all* workers. The court in *Kelly v. American Fed. of Musicians' & Emp. Pension*, 602 F.Supp. 22, 24 (S.D.N.Y.1985) noted that Title VII applies equally to white males as it does to any other person.

After examining the text and legislative history of the statute, the Supreme Court held that "Title VII prohibits racial discrimination against ... white petitioners ... upon the same standards as would be applicable were they Negroes...." *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 280, 96 S.Ct. 2574, 2578, 49 L.Ed.2d 493 (1976).

As seen in many cases, *all* individuals are protected by Title VII. See *Bishopp v. District of Columbia*, 788 F.2d 781 (D.C. Cir.1986) holding Title VII protects whites as well as blacks; *DeLesstine v. Fort Wayne State Hosp., Etc.*, 682 F.2d 130 (7th Cir.1982) holding that Title VII does not protect one group more than another; and *Tomkins v. Public Serv. Elec. & Gas Co.*, 568 F.2d 1044, (3rd Cir.1977) holding that Title VII protects males as well as females.

Despite the language used in *Green* describing the plaintiff's prima facie case, those elements are not cast in stone. In *Green*, the Court was careful to point out:

> The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from re-

| NEW HIRES | | | NEW HIRES | | |
| --- | --- | --- | --- | --- | --- |
| NAME | AGE | SEX | NAME | AGE | SEX |
| Bradley, L. | 39 | F | Barboza, W. | 39 | M |
| Moskowitz, G. | 30 | F | Snyder, M. | 22 | F |
| LeKar, J. | 36 | M | Takeuchi, Y. | 34 | M |
| Bixby, J. | 27 | F | Gauthier, J. | 25 | F |
| Hall, H. | 30 | F | Pickering, R. | 40 | M |
| Popolano, R. | 24 | M | Spica, G. | 29 | M |
| Leszcynski, N. | 23 | F | Buettner, M. | 42 | F |

spondent is not necessarily applicable in every respect to differing factual situations. At 411 U.S. 802 n. 13, 93 S.Ct. at 1824 n. 13.

Therefore, it is possible that the plaintiffs, although all males, are still entitled to bring a Title VII claim based upon their alleged discriminatory discharge from Hilton. Specifically, the plaintiffs argue that but for their masculinity, they would not have been terminated. As in age discrimination cases, Title VII complainants are entitled to raise both the disparate treatment and the disparate impact theories in order to prove discrimination.

## A. DISPARATE TREATMENT

In any Title VII case, the "central focus of the inquiry ... is whether the employer is treating a plaintiff less favorably than others because of his race, color, religion, sex or national origin." *DeLesstine* at 133. Under the disparate treatment theory the "plaintiff must prove intentional discrimination to make out a discrimination claim ..." *Robinson v. Adams*, 847 F.2d 1315, 1316 (9th Cir.1987).

The plaintiff's prima facie case is based on the elements expounded on in *Green*. However, in a case involving an alleged discriminatory discharge the *Green* test is not applicable. A variation in the test is required. (This was foreseen by *Green*. *Supra*). In the Ninth Circuit, the prima facie elements which apply to a discriminatory discharge case were stated in *Sengupta v. Morrison–Knudsen Co., Inc.*, 804 F.2d 1072, 1075 (9th Cir.1986). The court said:

> The *McDonnell Douglas* (*Green*) standards are adaptable to different factual situations.... In the discriminatory discharge context, the plaintiff must show (i) that he was within the protected class; (ii) "that he was doing his job well enough to rule out the possibility that he was fired for inadequate job performance"; and (iii) "that his employer sought a replacement with qualifications similar to his own, thus demonstrating a continued need for the same services and

skills." *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013 (1st Cir.1979).

These exact elements were recently affirmed in the Ninth Circuit in *Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 672 (9th Cir.1988). Some jurisdictions have recited a fourth element which is necessary for the prima facie case of discriminatory discharge. In the *Kelly* case, the court stated that the plaintiff had to show that after the discharge he was replaced by a non-minority employee. At 24. Indeed, 13 of the 37 plaintiffs were replaced by males as shown on the replacements new hire slips.

However, this factor has been discounted as a necessary requirement. Several courts have held that this factor goes to the weight of the evidence rather than to the legal sufficiency of the discrimination claim. In *Giannotti v. Foundry Cafe*, 582 F.Supp. 503, 506 (D.Conn.1984) the court held:

> The gender of the employee who replaces a discharged Title VII plaintiff pertains to weight of evidence rather than to legal sufficiency. The sex of the replacement employee may provide indirect evidence of the motives for the plaintiff's discharge. Thus, if a male employee is replaced with a female employee, this may support his claim of unlawful sex discrimination. If a male employee is replaced with another male, this may undercut his claim. In either case, facts about any successor employee are merely one form of evidence going to the central question: the motive behind the plaintiff's discharge.

This view of the "replacement" element is widely held. See *Toscano v. Nimmo*, 570 F.Supp. 1197 (D.Del.1983); *EEOC v. Tufts Inst.*, 421 F.Supp. 152 (D.Mass.1975); *Delgado v. Lehman*, 665 F.Supp. 460 (E.D. Va.1987); *Hornsby v. Conoco*, 777 F.2d 243 (5th Cir.1985); and *DeLesstine*. All of these cases base their ruling on the true nature of the plaintiff's burden in a Title VII case—proving that the *intent* of the employer was to act against the plaintiff because of his sex, race etc.

The facts surrounding the termination in the case at bar fit squarely within the test set out in *Sengupta*. First, all of the plaintiffs are within a protected class—they are all males. Secondly, there is no evidence that the plaintiffs were terminated for poor job performance. Finally, the evidence has shown that Hilton immediately replaced the plaintiffs demonstrating a continued need for the same service and skills as provided by the plaintiffs. (Thus, the termination was not a "layoff").

Since some of the plaintiffs were replaced by males the weight of the evidence (see *Giannotti*) still does not lean towards a finding of sex discrimination, despite the easy fulfillment of the *Sengupta* requirements. However, there is much additional evidence which, when grouped with the above, clearly shows Hilton's discriminatory intent, based upon sex, in the termination of the plaintiffs.

The statistical results in the report of the plaintiffs' expert economist, Dr. Bernard Malamud provide strong proof of Hilton's discriminatory intent. (Statistics are a proper form of evidence to establish the prima facie case under the disparate treatment theory. *Sengupta*, at 1075). Dr. Malamud made many significant findings from which reasonable minds could infer that Hilton discharged the plaintiffs in a discriminatory fashion.

The report shows that, of the plaintiffs terminated, 100% of them were male, but, of the replacements hired by Hilton, only 35% were male. The report also concludes that when observing the floormen and dealers at the Hilton, the probability that the 37 terminated employees would all be male was one chance in a million.

Further, the report shows that men were significantly (in a statistical sense) overrepresented among those terminated. Finally, the report concludes that men were significantly underrepresented among those hired in September 1983 when compared to the numbers of men and women in Hilton's applicant pools of 1983.

Taken together, these findings lead one to reasonably conclude that chance cannot explain the firing and hiring policy of Hilton on September 3, 1983. From the fact that males made up 100% of the terminations and that Hilton filled the vacancies with significantly fewer males than the applicant pools would suggest, one could reasonably infer that Hilton intentionally sought to reduce its male work force in favor of having more females in the casino. The fact that some of the plaintiffs were replaced by males is inconclusive that Hilton did not discriminate based upon the plaintiffs' sex. Also, one could easily infer that Hilton refused to replace the terminated employees based on a sex neutral standard and that the occurrence of male replacements simply reflects the possibility that Hilton ran out of female replacements.

There are two bits of evidence which further support the finding that Hilton intended to replace the male plaintiffs with females. First, there is the letter which Bob Kelly, the casino manager, sent to Hilton's former slot manager stating as one reason for the slot manager's termination was that Hilton wanted a "new faces" policy. Secondly, there are the oral remarks made by Bob Kelly to plaintiff Marko Kustudia stating to the same effect that Hilton wanted to implement a "new faces" policy. The statistics certainly prove that Hilton put new faces in the casino in a significant way after the terminations.

As in the age discrimination situation, once the plaintiff has made his prima facie case the burden shifts to the defendant to rebut the presumption of discrimination by showing that the plaintiff was discharged for some legitimate purpose. *Green*, 411 U.S. at 802, 93 S.Ct. at 1824. In this case, Hilton has stated that the low P.C. in the 21 pit was the reason for the terminations. More specifically, the Hilton, after many months of trying to find a reason for the low P.C., terminated the plaintiffs as a last resort. Hilton, through its president Barron Hilton, tried to show that the P.C. problem was corrected shortly after the terminations. Further, Hilton argues that the 37 plaintiffs were not loyal to Bob Kelly nor were they ambitious in implementing the changes he made in the casino.

Plaintiffs have shown to this court's satisfaction that these arguments are pretextual. There is no evidence that plaintiffs were in any way involved with, or had any control over, the low P.C. Further, there is no evidence sufficient to support a finding that these plaintiffs were not hard working or that they refused to follow the orders of Bob Kelly.

Hilton has failed to rebut the plaintiffs' prima facie case. This court finds sufficient proof that Hilton intentionally treated the plaintiffs less favorably than other employees, based upon their sex. This finding conclusively proves that Hilton violated Title VII (42 U.S.C. sec. 2000e–2(a)(1)) as towards the plaintiffs under the disparate treatment theory.

### B. DISPARATE IMPACT

Plaintiffs also seek to prove discriminatory discharge under Title VII based upon the disparate impact theory. The criteria set out in *Green* for disparate treatment cases "do not apply to disparate impact cases." *Hung Ping Wang v. Hoffman*, 694 F.2d 1146 (9th Cir.1982). Therefore, a plaintiff does not have to prove discriminatory intent on the part of the employer. *Id.* See also *Sengupta* at 1076; and *Peters v. Lieuallen*, 693 F.2d 966 (9th Cir.1982).

The Ninth Circuit in *Peters* has stated the proper analysis for a disparate impact case.

A disparate impact claim challenges a practice neutral on its face, but having a more adverse impact on minorities than others.... The plaintiff has the initial burden of proving that the selection system results in a "significantly discriminatory impact." (Citations omitted). The burden then shifts to the employer to prove that no disparity exists, ... or that the practice is necessary to the efficient operation of the business. At 968–69.

Again, under this theory, Dr. Malamud's report is evidence of discrimination. In *Robinson v. Adams*, 847 F.2d 1315, 1318 (9th Cir.1987) the court stated: "Such proof [of disparate impact] is usually accomplished by statistical evidence."

In the case at bar, the facially neutral policy undertaken by Hilton was to terminate all those employees in the 21 pit on the swing and grave shifts who were hired prior to January 1, 1972 (the hire date of Bob Kelly). As shown by Dr. Malamud's report, the result of this policy was to adversely affect the male casino employees of the Hilton. As shown in the above section, 100% of the terminated employees were male. The probability that all of the terminated employees would be male was one in a million.

Further, the replacement procedure used by Hilton additionally supports a finding that males were more adversely affected than females. Again, as stated above, men were significantly underrepresented among those hired in September 1983 when compared to Hilton's applicant pools of 1983. These results are sufficient for the Plaintiffs to meet their initial burden.

As stated in *Peters*, the burden then shifts to Hilton to prove either that no disparity exists or that the termination on September 3, 1983 was necessary to the efficient operation of the Hilton Casino. This court adopts the same analysis as used in the discussion of disparate treatment and finds that Hilton has failed to rebut the presumption of discrimination.

### CONCLUSION AND DAMAGES

In light of the above analyses, this court finds that, under both the disparate treatment and disparate impact theories, Defendant Hilton violated 42 U.S.C. sec. 2000e–2(a)(1) when it discharged plaintiffs based upon their sex.

As damages for the sex discrimination claim, this court adopts and fixes the same amount of damages as the jury found for past loss under the age discrimination claims. As to the five plaintiffs under the age of 40 (Amie, Drake, Landers, Newman, and Pollins) this court adopts and fixes the same amount of damages as the jury found for past loss for the breach of contract claims.

These amounts are as follows:

| PLAINTIFF | AWARD |
|---|---|
| Amie, F. | $ 46,945 |
| Ballard, N. | 40,502 |
| Bosarge, J. | 65,643 |

| PLAINTIFF | AWARD |
|---|---|
| Brooks, J. | $ 15,083 |
| Dawson, R. | 32,389 |
| Delling, D. | 38,317 |
| Drake, A. | 22,070 |
| Dudley, R. | 5,732 |
| Gasson, R. | 67,409 |
| Gill, H. | 54,332 |
| Grace, D. | 35,039 |
| Hineline, J. | 101,554 |
| Jodra, V. | –0– |
| Kustudia, M. | 36,233 |
| Landers, J. | 62,319 |
| McDonough, J. | 7,683 |
| Meranto, R. | 68,173 |
| Mikitaroff, J. | –0– |
| Mitchell, N. | 76,057 |
| Navarro, J. | 53,870 |
| Neill, E. | 63,353 |
| Newman, T. | 22,275 |
| Estate of D. Penny | 72,808 |
| Pintaone, A. | 55,131 |
| Pollins, J. | 22,225 |
| Prewitt, W. | 36,387 |
| Rexroad, P. | 32,714 |
| Rodriguez, V. | 107,740 |
| Saunto, J. | 18,294 |
| Estate of J. Shailer | 37,332 |
| Stanford, M. | –0– |
| Sterling, J. | 64,845 |
| Torres, J. | –0– |
| Vanstrom, K. | 96,915 |
| Williams, V. | 67,306 |
| Zarro, T. | 76,207 |