**Tommie L. TOLIVER, Plaintiff,**

**v.**

**COMMUNITY ACTION COMMISSION TO HELP THE ECONOMY, INC., CACHE, Defendant.**

**No. 81 Civ. 4932 (JES).**

United States District Court,
S.D. New York.

July 19, 1985.

---

Tommie L. Toliver, pro se.

Oppenheim & Meltzer, Monticello, N.Y., for defendant; Stephen L. Oppenheim, Monticello, N.Y., of counsel.

## OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff Tommie L. Toliver brings an action against defendant Community Action Commission to Help the Economy ("CACHE"), a New York, not-for-profit corporation, alleging discrimination on the grounds of race and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17 (1982). In short, plaintiff contends that he was denied a promotion to Executive Director and terminated from his position as Deputy Director of CACHE because he is a black male.

## BACKGROUND

In May of 1979, plaintiff was employed by CACHE as Deputy Director under a written contract for one year. In August of 1979, the post of Executive Director at CACHE became vacant. From August 23, 1979 until January 2, 1980, plaintiff functioned as Acting Executive Director of CACHE; during that time he applied for the position on a permanent basis. *See* Pre-Trial Order at ¶ 5. However, on January 2, 1980 the Board of Directors of CACHE ("Board") named Gladys Walker, a black female employee at CACHE, as Executive Director. *See id.* Plaintiff continued in his position as Deputy Director until May 15, 1980, when the Board decided not to renew his employment contract.

In August of 1980, plaintiff filed complaints with the New York State Human Rights Commission and the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of his sex and race in the denial of promotion and discharge by CACHE. On May 29, 1981, the EEOC found no reasonable cause to believe plaintiff's claims of discrimination were true, and issued a Notice of Right to Sue letter. *See* Exhibit A to Answer. On August 10, 1981, plaintiff filed the instant

action under Title VII in the United States District Court, Southern District of New York.

■ Since plaintiff was proceeding pro se in a Title VII case, and *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) (1982), there was no clear statutory authority for the prepayment of discovery costs. *See, e.g., Ebenhart v. Power,* 309 F.Supp. 660, 661 (S.D.N.Y.1969) (mem.) ("Grave doubts exist as to whether Section 1915 authorizes this Court to order the appropriation of Government funds in civil suits to aid private litigants in conducting pre-trial discovery.") Fortunately, defendant was cooperative in producing for plaintiff's questioning a large number of witnesses, most of whom were members of the defendant Board, and whose depositions were preserved by means of magnetic tape.[1] In addition, plaintiff sought the production of various witnesses at trial at public expense.

Because of the lack of statutory authority for the payment of such witness costs by the United States, *see, e.g., Haymes v. Smith,* 73 F.R.D. 572, 574 (W.D.N.Y.1976) ("The generally recognized rule is that a court may not authorize the commitment of federal funds to underwrite the necessary expenditures of an indigent civil litigant's action."); *Clark v. Hendrix,* 397 F.Supp. 966, 975 (N.D.Ga.1975); *see also* 53 Comp. Gen. 638, 643–45 (1974), the Court reviewed testimony of all of the deposed witnesses, which was preserved on magnetic tape. Nevertheless, notwithstanding the questionable statutory authority to pay witness costs, a significant number of witnesses sought by plaintiff were produced and testified at trial.[2]

■ The trial consumed three days. After an extensive record had been made, the Court permitted the filing of post-trial briefs. Plaintiff requested that a transcript of the trial be furnished at public expense, but the Court was constrained to deny that application, in an Order dated March 20, 1984, because of the absence of any statutory authority to provide a transcript to plaintiff prior to an appeal of the case. *See, e.g., Romero Barcelo v. Brown,* 655 F.2d 458, 462 (1st Cir.1981); *McClure v. Salvation Army,* 51 F.R.D. 215, 216 (N.D.Ga.1971); *see also* 28 U.S.C. § 753(f) (1982).[3] The defendant did not avail itself of the opportunity to file a post-trial brief, but plaintiff did in fact file such a brief on November 30, 1984.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Following the bench trial conducted on January 31, February 2, and July 18 of

---

1. The depositions of the following persons were preserved: Dr. Russell C. Davis, Leon Rockmore, David Kaufman, Ellie Patton, Brian Ingber, Dennis Greenwald (Members of CACHE Board); Gladys Walker (Executive Director of CACHE); Abraham Klineman (Member of CACHE Commission); J. Gorman (Director of Governing Board); Curtis Jackson (former Member of CACHE Board); Thomas Hubert (Chairman of CACHE Board); Elsa Greenwald (CACHE Board Alternate). Many of the CACHE personnel listed *supra* had limited knowledge of the events at issue in this case because they were either appointed to their respective positions after the events in question occurred, or because they were not involved in defendant's decision-making process regarding plaintiff's employment status at CACHE, his termination, or in evaluating plaintiff's job performance.

2. The following witnesses testified at trial: Gladys Walker (Executive Director of CACHE); Evelyn Haas (Personnel Committee Chairperson of CACHE); Lillian Kracke (CACHE Board Chairperson); George Billups (Finance Committee Chairperson of CACHE); Joan Howard (for-

mer Director of CETA); Paul Rouis (Sullivan County Administrator); Harold Trent (rejected applicant for position of Deputy Director of CACHE); Valentine Liu (former CACHE Board Member). The majority of the witnesses resided in Sullivan County, New York. Plaintiff had requested an even more extensive array of trial witnesses, but, despite repeated requests from the Court, Mr. Toliver was never able to make any specific showing of what these witnesses were expected to say. Nevertheless, the Court endeavored to obtain the testimony of all of those whose testimony might be even arguably relevant.

3. Section 753(f) provides for payment by the United States for transcripts for litigants permitted to appeal *in forma pauperis,* provided that the Court determines that such an appeal is not frivolous. *See* 28 U.S.C. § 753(f). Since plaintiff's application was submitted prior to the completion of this action, his request was clearly premature.

1984, the Court makes the following findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52.

 Upon reviewing the brief filed by plaintiff, all of the evidence heard at trial, and the depositions which the Court examined prior to trial, the Court concludes that plaintiff has failed to establish a prima facie case of racial or gender discrimination in violation of Title VII. *See, e.g., Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). However, even assuming *arguendo* that the plaintiff did establish a prima facie case, the totality of the evidence was more than sufficient to establish that plaintiff's discharge and lack of promotion were not motivated by any discriminatory considerations with respect to his race or gender. *See United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983).[4]

At the outset, it should be noted that the defendant Board was comprised of eleven members, six of whom were black and three of whom were black males. The record clearly supports the inference that there were numerous disputes between the plaintiff and the Board, most of which were, quite simply, personality clashes between plaintiff and members of the Board.

 While it is possible that in some instances plaintiff's position may have been arguably valid, it is not the function of the Court in a Title VII suit to resolve the merits of every dispute between a plaintiff and his employer. *See Garrett v. Saluda Shirt Co.*, 526 F.Supp. 1, 4 (D.S.C.1979). Suffice it to say that on the evidence elicited at trial, the Court is persuaded that the defendant was justified in seeking Toliver's termination for reasons quite unrelated to race or sex.

 There may be circumstances where a disagreement as to matters of policy, in which the plaintiff is unquestionably correct, may permit an inference of illegal discrimination. *Cf. Burdine, supra,* 450 U.S. at 259, 101 S.Ct. at 1096. This, however, is not such a case. The members of the Board testified that they found Mr. Toliver to be hypertechnical and extremely difficult to work with. Title VII does not require that a board of directors, or any employer, be constrained to maintain in its employ a person who creates or promotes extreme difficulty in effecting the legitimate objectives of the employer. *See Garrett v. Mobil Oil Corp.,* 531 F.2d 892, 896 (8th Cir.), *cert. denied,* 429 U.S. 848, 97 S.Ct. 135, 50 L.Ed.2d 121 (1976). An employer must be permitted some latitude in its ability to effect compliance with its directives by an employee.

The record in this case makes clear that the Board's displeasure with Mr. Toliver had nothing whatsoever to do with his race and/or gender, but was motivated by a genuine, justifiable, and understandable displeasure, annoyance, and perhaps even frustration at his argumentative propensities, which frequently made it impossible for the Board to handle the matters before it efficiently and with dispatch.

It is indeed questionable whether plaintiff established that he had the requisite qualifications for the position he sought, and that after he was rejected for the position, "the position remained open and the employer continued to seek applicants from persons of complainant's qualifica-

---

**4.** In *Aikens,* the Supreme Court held that when a Title VII case has been fully tried on the merits, whether plaintiff ever made out a prima facie case is no longer relevant; rather the Court should focus on the "ultimate question of discrimination *vel non." Aikens, supra,* 460 U.S. at 714–15, 103 S.Ct. at 1481–82. The *Aikens* Court stated:

> Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether "the defendant intentionally discriminated against the plaintiff."

*Id.* at 715, 103 S.Ct. at 1482 (quoting *Burdine, supra,* 450 U.S. at 253, 101 S.Ct. at 1093).

tions." *See McDonnell Douglas, supra,* 411 U.S. at 802, 93 S.Ct. at 1824. From all the testimony that the Court heard, the black woman appointed to the position of Executive Director by the Board was an extremely qualified person who was, in all probability, more qualified than the plaintiff. Therefore, as noted above, the Court is not persuaded that plaintiff ever established a prima facie case. *See id.*

 However, even assuming arguendo that plaintiff's termination as Deputy Director at CACHE met the bare requirements of a prima facie case, it is clear that the defendant has more than carried its burden of establishing that it had a good faith business justification for terminating him and that its conduct was not a pretext for discrimination. *See id.* at 804, 93 S.Ct. at 1825. Indeed, given the racial and sexual composition of the Board, the inference of discrimination which plaintiff seeks to have this Court draw from his termination is, to say the least, attenuated. *Compare New York City Transit Authority v. Beazer,* 440 U.S. 568, 584 n. 25, 99 S.Ct. 1355, 1365 n. 25, 59 L.Ed.2d 587 (1979).

It follows that the complaint in the above-captioned action must be dismissed with prejudice.

It is SO ORDERED.