Julio ESTEPA, Plaintiff,

v.

John S.R. SHAD, Chairman, Securities and Exchange Commission, Defendant.

No. 85 CV 2375.

United States District Court, E.D. New York.

Jan. 28, 1987.

Jose A. Rivera, Brooklyn, N.Y., for plaintiff.

Richard M. Humes, Asst. Gen. Counsel, S.E.C. by James A. Brigagliano, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Plaintiff filed an action against John S.R. Shad,[1] Chairman of the Securities and Exchange Commission ("SEC"), alleging unlawful discrimination on the basis of age and national origin in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a, and Title VII of the Civil Rights Act as amended, 42 U.S.C. § 2000e–16(a). Following a two-day bench trial, the Court makes the following findings of fact and conclusions of law.

## I. FINDINGS OF FACT

Plaintiff, Julio Estepa, is a white male, born in Puerto Rico on November 16, 1918. (Stip. 1.) He started working for the SEC's New York Regional Office ("NYRO") in 1957 and retired in September of 1984. (Stip. 3, Exh. E.) Between 1957 and 1984 plaintiff was promoted from GS–3 file clerk to GS–6/10 investigative assistant. (Stip. 4, 5, 9, 10, 15.) In December of 1982 the position of Support Services Supervisor ("SSS") opened in the NYRO. (Stip. 18.) The position had been held by Henry Wong, an outstanding employee of Oriental descent. During his tenure as SSS, Wong experienced management problems which led to his resignation in December of 1982. (Tr. 179.) On December 12, 1982, the SEC posted a vacancy announcement for the SSS position. (Stip. 18.)

On December 30, 1982, plaintiff applied for the SSS position. In the NYRO, the SSS reports directly to Robert Van Horn, the administrative officer. (Tr. 106.) The SSS's duties include responsibilities for mail, filing, copying, procuring supplies and equipment, controlling correspondence, maintaining the law library and generally supervising the staff. (Stip. 19.) The support service section of the NYRO is located in the File Room (Tr. 131), which is adjacent to the Public Reference Room. The operations of the File Room and the Public Reference Room are interrelated and employees from the two rooms work together. (Tr. 77, 277.) In December of 1982, the staff of the File Room and Public Reference Room consisted of four black females, two black males and two white males. (Tr. 78, 79.) When Henry Wong resigned and the SSS position opened, the morale and productivity of the File Room were very low.

Originally, four SEC employees of the NYRO applied for the SSS position. (Exh. N, p. 4.) One applicant, Myrtle Johnson, later withdrew her application. *Id.* at 5. The remaining three applicants were the plaintiff, a 64–year–old Hispanic male, Alfred White, a 58–year–old black male and Nancy Blanche, a 49–year–old black female. (Stip. 1.) All three candidates were interviewed. The promotion interviews were organized by Donald Malawsky and conducted by Michael T. Gregg, a 42–year–old white male, then Deputy Regional Administrator, and Robert Van Horn, a 41–year–old white male, then Administrative Officer of the NYRO. (Tr. 181, 208.) The selecting officials were looking for an SSS with "tact," "poise" and the ability to gain the cooperation of others. (Tr. 81, 82.) Their goal was to find an SSS capable of improving the File Room's productivity and morale. (Tr. 83, 180, 212–13.)

During the interviews each candidate was asked, in substance, what the problems of the File Room were and what could be done to improve the situation. (Tr. 70,

---

**1.** The SEC is an agency of the United States Government. At the time of the alleged discrimination John S.R. Shad was Chairman of the SEC.

71, 214.) White identified the major problems of the File Room and suggested ways to improve productivity and morale. He pointed out that File Room workers were trained to perform only one task, therefore, when one employee was sick his work piled up. To solve the problem, White suggested cross-training File Room employees. (Tr. 85, 214, 279.) Moreover, to increase productivity, White stated that he would not allow File Room employees to take their lunch hour, only to return and eat lunch at their desk. (Tr. 279.) White was ultimately appointed to the SSS position. He is a high school graduate and a World War II veteran. (Tr. 93, 280.) When he joined the NYRO, in 1972, he worked in the File Room. In 1975, White was promoted to a position in the Public Reference Room (Tr. 275), where he was regarded as an outstanding employee who got along well with his co-workers. (Tr. 87, 186, 187.) His hard work was rewarded by a quality step increase for outstanding performance, a nomination for a federal business association award and an outstanding performance rating in 1982–83. (Tr. 257, 276.) White was also the acting supervisor of the Public Reference Room when his supervisor was away. He has worked with the File Room personnel, observed the File Room's operations and witnessed the File Room's changes. (Tr. 64, 88–89, 277.)

Plaintiff has not worked in the File Room since 1968, has never worked in the Public Reference Room and never graduated from high school. During his interview he suggested that the File Room would run better without women and stated that as a supervisor he would "crack the whip." (Tr. 58, 59, 81–82, 109–10, 189.) At no time during the interview did Gregg or Van Horn ask any questions or make any comment regarding plaintiff's national origin, age or potential retirement plans.[2] In fact plaintiff knows of no incident or statement by Gregg, Van Horn or Malawsky which could imply that he was discriminated against on the basis of his age or national origin. Gregg and Van Horn independently chose White. (Tr. 217.) Van Horn was aware of the plaintiff's lack of supervisory or File Room experience and was impressed with White's statements regarding management, assignments, employees, staff cooperation and good performance rewards. (Tr. 87.) Gregg found that White would be the most effective manager, capable of improving the File Room's morale and productivity. (Tr. 217.) In contrast, Gregg and Van Horn found plaintiff inflexible and lacking the necessary qualities of an SSS. (Tr. 82, 218.) Gregg, Van Horn and Malawsky testified that neither age nor national origin were factors in plaintiff's nonselection. (Tr. 106, 192, 219.) Before finalizing White's nomination, Gregg and Van Horn reviewed each candidate's written evaluation. (Tr. 252, 266, 270.)

The promotion of SEC employees is governed by the SEC's Merit Promotion Plan C[3] ("Plan"). (Tr. 28, 32, Plan p. 1.) In this

---

**2.** Plaintiff talked about retirement daily. (Exh. P, p. 63; Tr. 112–14, 119.) He followed the changes in the Civil Service retirement system and spoke to Van Horn and Gregg about retiring. (Tr. 113, 212.) Nevertheless, Gregg and Van Horn encouraged plaintiff to apply for the SSS position. (Tr. 112–13, 212.)

**3.** Under Merit Plan C, candidates applying for promotions are required to submit a Merit Promotion Application. (Plan C, p. 7.) In addition, their current supervisors must complete an Appraisal Rating. (Plan C, p. 8.) The Merit Promotion Application and the supervisor's Appraisal Rating are sent to the SEC's Office of Personnel in Washington, which determines a Record Rating Score, based on the candidate's background, relevant experience, education and awards, and an Appraisal Rating Score based on

the supervisor's evaluation. (Plan C. pp. 10–11.) The Record Rating Score and the Appraisal Rating Score are combined to form a "total promotion score." (Plan C, p. 10.) The score is used by the Office of Personnel to identify three to five of the best qualified candidates, who are then certified as qualified. (Plan C, p. 10.) The purpose of the appraisal process is to "narrow a field of candidates to a reasonable number," so that the selecting official will be able to interview them all. (Tr. 95.) The names of the certified candidates are sent to the Selecting Official on a Promotion Certificate. (Plan C, p. 11.) "The Selecting Official is entitled to select any of the candidates on the certificate." (Plan C, p. 11; Tr. 95.) The Selecting Official is not bound by and, in fact, never sees the total promotion scores. (Tr. 243.) Record ratings and total promotion scores are not retained by the SEC. Therefore, it is impossible

case, the selection procedure of the NYRO was proper if not exactly in accord with the Plan. Under the Plan, the SEC's Office of Personnel must "rate" every applicant and "certify" the best qualified candidates. Only certified candidates are interviewed and considered for the position. (Plan pp. 7, 8, 10, 11.) The NYRO conducted the interviews before the candidates' certifications. William E. Ford, II, the Assistant Director of Personnel, reviewed the NYRO's selection procedure. (Tr. 244.) After noticing that the interviews had been conducted before the candidates' certification, Ford refused to finalize White's nomination until the proper ratings, appraisals and certifications were completed. (Tr. 252.) Plaintiff's supervisory evaluation was done by Michael Gregg and Andrew Goldstein, then Regional Administrators, and Myrtle Johnson completed White's appraisal. All three applicants were eventually certified by the Office of Personnel as qualified for the SSS position. (Plan p. 11.) After reviewing the entire selection procedure Ford concluded that the NYRO's procedural errors were of no consequence. (Tr. 244, 252.) Ford then approved and finalized White's selection pursuant to his authority under the Merit Promotion Program.[4] (Tr. 244–246.)

In February of 1983, plaintiff filed a complaint with the SEC's Office of Equal Employment Opportunity ("EEO") alleging unlawful discrimination based on age and national origin. (Stip. 22.) Plaintiff's allegations were thoroughly investigated by the EEO's office. All of the relevant documents were reviewed and eleven witnesses testified, including Gregg, Van Horn, Malawsky and all the candidates to the SSS position. (Exh. N, p. 1.) The SEC held that plaintiff had not been discriminated against and that the reasons given by management for plaintiff's nonselection were nondiscriminatory. Finally, the SEC held that plaintiff did not offer any evidence to prove that the SEC's nondiscriminatory reasons for his selection were pretextual. *Id.* at 13, 15.

## II. CONCLUSIONS OF LAW

Under Title VII and the ADEA, a plaintiff has the burden of showing, by a preponderance of the evidence, a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Haskell v. Kaman Corp.,* 743 F.2d 113, 119 (2d Cir.1984). If the plaintiff succeeds in proving a prima facie case, the burden shifts to the defendant to articulate legitimate, nondiscriminatory reasons for the employee's nonselection. *See McDonnell,* 411 U.S. at 802, 93 S.Ct. at 1824. If the defendant articulates such reasons, the plaintiff must then prove, by a preponderance of the evidence, that the employer's reasons are merely pretextual. *Id.* at 804, 93 S.Ct. at 825; *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). The burden of persuasion, however, always remains with the plaintiff to show intentional discrimination by the defendant. *Id.*

Plaintiff claims that his nonpromotion was the result of discrimination based on national origin, in violation of Title VII, and age discrimination in violation of the ADEA.

Defendant takes the position that this Court must address the Title VII claim on its merits and not decide whether plaintiff established a prima facie case.[5] *Ansonia*

---

to decide which candidate had the best scores. Merit Plan C provides that "unless it is impracticable to do so, the Selecting Official will conduct an oral interview with each candidate." (Plan C, p. 11.) The purpose of the interview is to determine whether the applicants have characteristics which would reflect on their suitability for the position, and to afford candidates an opportunity to "personally represent themselves," and to "expand upon their applications," thereby giving the interviewing panel a better sense as to whom should be selected. (Tr. 93, 94.)

**4.** The Merit Promotion Program governs all promotions to positions in the competitive civil service including SSS.

**5.** We will not decide whether or not plaintiff established a prima facie case. However, this Court is puzzled by the recent decisions in this Circuit and others, which hold that, to establish

*Board of Education v. Philbrook,* —— U.S. ——, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986) (once the defendant has set forth its legitimate nondiscriminatory reasons for taking the challenged employment action, the district court should decide whether plaintiff has met his burden of proving intentional discrimination by defendant).

At trial defendants articulated numerous legitimate, nondiscriminatory reasons for promoting White and not plaintiff. Legitimate reasons are objective and subjective [6] reasons not based on impermissible criteria such as race, national origin, religion, sex and age. *Burdine,* 450 U.S. at 256–57, 101 S.Ct. at 1095–96. In this case, defendant's reasons included White's supervisory experience, his knowledge of the File Room operations and his educational background. Moreover, the selecting officials were entitled to conclude from the interviews that plaintiff may not get along with his co-workers, *see Meiri v. Dacon,* 759 F.2d 989, 997 (2d Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985), and that White's management style was preferable, *see Toliver v. Community Ac-tion Comm'n to Help the Economy, Inc., CACHE,* 613 F.Supp. 1070, 1073 (S.D.N.Y. 1985), *aff'd,* 800 F.2d 1128 (2d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 217, 93 L.Ed.2d 146 (1986). By articulating legitimate reasons for his actions, defendant sustained his burden. At that point, plaintiff had to prove, by a preponderance of the evidence, that defendant's reasons were merely a pretext for discrimination. *McDonnell,* 411 U.S. at 804, 93 S.Ct. at 1825. In this case, plaintiff failed to present any evidence of defendant's intentional discrimination. Accordingly, we hold that plaintiff failed to prove that his nonselection was discriminatory.

Plaintiff's second claim alleges age discrimination under ADEA.

To establish a prima facie case of age discrimination under ADEA, plaintiff must show that (1) he is within the protected age group (at least 40 years of age), (2) he was qualified for a promotion, (3) he was not promoted and (4) a person outside the protected class or "substantially younger" was promoted. *Haskell v. Kaman Corp.,* 743 F.2d 113, 122 (2d Cir.1984).

---

a prima facie case of discriminatory discharge under Title VII, a plaintiff need not show that he or she was replaced with a person from a nonprotected class. *Meiri v. Dacon,* 759 F.2d 989, 996 (2d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 91 (1985); *Hornsby v. Conoco Inc.,* 777 F.2d 243, 246, 88 L.Ed.2d 74 (5th Cir.1985); *Byrd v. Roadway Express, Inc.,* 687 F.2d 85, 86 (5th Cir.1982). Traditionally, to establish a prima facie case of discrimination and raise an inference of discrimination, a plaintiff had to show that (1) he was a member of a minority (protected class), (2) he was qualified for the job, (3) he was discharged and (4) he was replaced by a member of a nonprotected class. *See Said v. Institute of International Education, Inc.,* 29 Empl.Prac.Dec. (CCH) ¶ 32,751; 25,530; 25,534 (S.D.N.Y.1982); *Kelly v. American Federation of Musicians' and Employers' Pension Welfare Fund,* 602 F.Supp. 22, 24 (S.D.N.Y.), *aff'd,* 795 F.2d 79 (2d Cir.1985); *Gutierrez v. Denver Post, Inc.,* 691 F.2d 945, 947 (10th Cir.1982). In this Court's view, absent other facts from which inferences may be drawn, unless a Title VII plaintiff is replaced by a member of a nonprotected class, proof of intentional discrimination appears extremely difficult, if not practically impossible.

**6.** Where an employer considers candidates for a supervisory position, it may rely on subjective criteria. *See, e.g., Royal v. State Highway Com-mission of Missouri,* 549 F.Supp. 681, 684 (E.D. Mo.1982), *aff'd,* 714 F.2d 867 (8th Cir.1983) (subjective analysis of leadership ability, supervisory skills, effectiveness of judgment, and willingness to cooperate and work with others were legitimate considerations). *See also Lieberman v. Gant,* 630 F.2d 60, 67 (2d Cir.1980) (use of subjective evaluation in tenure decision approved); *Toliver v. Community Action Comm'n to Help the Economy, Inc., CACHE,* 613 F.Supp. 1070, 1073 (S.D.N.Y.1985), *aff'd,* 800 F.2d 1128 (2d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 217, 93 L.Ed.2d 146 (1986) (employer's displeasure with plaintiff's work attitude is legitimate nondiscriminatory reason for nonpromotion to executive director); *Mason v. Continental Illinois National Bank,* 704 F.2d 361, 365–66 (7th Cir.1983) (subjective evaluations for managerial positions permitted); *Anderson v. City of Albuquerque,* 690 F.2d 796, 802 (10th Cir.1982) (subjective evaluation of candidates for supervisory position is not in itself a basis for finding discrimination); *Ayon v. Sampson,* 547 F.2d 446, 451 (9th Cir.1976) (subjective determination that plaintiff did not get along with co-workers legitimate in connection with evaluation for promotion to management position).

Age discrimination was not an issue at trial. The six-year age difference between White and plaintiff does not render White "substantially younger." Therefore, plaintiff has not established a prima facie case of age discrimination, and his claim is denied.

■ After the close of his case, plaintiff moved to amend the complaint to include a claim that White's selection violated his Fifth Amendment rights to procedural and substantive due process. (Tr. 173.) 42 U.S.C. § 2000e–5(f)—(k) provides the exclusive judicial remedy for claims of federal employment discrimination. *Brown v. General Services Administration*, 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976). Therefore, plaintiff's motion to amend his complaint is denied.

SO ORDERED.