Lucy E. CARTER, Plaintiff,

v.

AT & T COMMUNICATIONS, Defendant.

No. 89 Civ. 5930 (RPP).

United States District Court, S.D. New York.

March 22, 1991.

Goldman & Goldman, New York City by Steven F. Goldman, for plaintiff.

Robert J. Aurigema, James D. Cutlip, New York City by Robert J. Aurigema, James D. Cutlip, for defendant.

## OPINION AND ORDER

ROBERT P. PATTERSON, JR., District Judge.

Plaintiff, a black woman, brings this action alleging discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and alleging various state law violations including breach of contract, tortious inference with contract, negligent infliction of emotional distress and defamation. Defendant has moved to dismiss the complaint in its entirety or for summary judgment on all counts pursuant to Fed.R.Civ.P. 56. Plaintiff cross-moved for an order compelling discovery pursuant to Rule 37 [1] or, in the alternative, for a continuance of defendant's motion under Rule 56(f). For the reasons set forth below, defendant's motion is granted in part, denied in part and continued in part. Plaintiff is granted a 60–day continuance in order to conduct limited discovery relating to her Title VII claim.

## BACKGROUND

It is undisputed that Lucy Carter ("Carter"), a 55–year old black woman, was first hired by AT & T Communications ("AT & T") in May 1957 and from 1972 to 1984 held the position of Group Manager in an AT & T Traffic Service Position System ("TSPS") office in New York City. *See* Def. Rule 3(g) Stmt. ¶ 1–2; Pl. Rule 3(g) Stmt. at 4. It is similarly undisputed that plaintiff was never formally terminated by AT & T; rather, on June 7, 1987 plaintiff accepted a new position at New York Telephone. *Id.* Although the facts and events beginning in 1984 and culminating in plaintiff's transfer in 1987 are in dispute, the parties' respective contentions can be easily summarized.

AT & T engages in an annual management appraisal process through which managers are given annual performance ratings. Moccia Aff. filed July 20, 1990 ¶ 6. The Office Manager typically completes the appraisal and recommends a performance rating which is subject to approval by the District Manager for that office. *Id.* For

---

1. Plaintiff never requested, by letter or otherwise, "an informal conference with the court" prior to filing her Rule 37 motion, as required by Local Civil Rule 3(f).

the year ending on November 30, 1984, Delores Thompson ("Thompson"), plaintiff's Office Manager, recommended a rating of "G" or "Good" for plaintiff's work. *Id.* ¶ 7. The District Manager, Thomas Mullen ("Mullen"), changed plaintiff's rating from the "G" Thompson had recommended to a "G-", a rating which is deemed less than satisfactory by AT & T. *Id.* ¶¶ 7-8 & Exh. A. Under company policy, a G- rating requires that the employee be placed on a six-month performance development plan with a new performance evaluation to be performed after six months. Plaintiff was placed on such a six-month plan, although the exact beginning date of that period is unclear from the record.[2]

In January 1985, Richard Moccia ("Moccia") replaced Delores Thompson as Office Manager of the TSPS office where plaintiff worked. Moccia Aff. ¶ 4. In June 1985, near the end of the six-month performance development period, Moccia conducted a review of plaintiff's records including the Operator Observation Records she regularly prepared. *Id.* ¶ 10. He alleges that he detected at least 30 incorrect false entries for the preceding six months by comparing plaintiff's operator observances with payroll time reports for operators in the group she managed. *Id.* ¶ 11. Several of the discrepancies involved instances where Moccia concluded that Carter had entered operator observations at a time when either Carter or the operator was not at work. *Id.* ¶ 13 & Exh. B. Moccia interviewed several operators who confirmed to him that no observations had been made on the dates recorded by plaintiff. *Id.* ¶ 12.

Moccia claims that he and Acting District Manager David McGuffey ("McGuffey") confronted Carter with the discrepancies, informed her that her actions were in violation of AT & T's Code of Conduct requiring accurate recordkeeping and gave her the opportunity to explain which they state she was unable to do. *Id.* ¶¶ 15, 17 & Exh. C.

On June 18, 1985, plaintiff was demoted to the position of Operator, a non-management position at the level where plaintiff had last performed satisfactorily. *Id.* ¶¶ 16, 18. Plaintiff's position as Group Manager was thereafter filled by a black female. *Id.* ¶ 20. In June 1985, seven of the nine Group Managers in the office in which plaintiff worked were black. *Id.* ¶ 19. AT & T alleges that plaintiff was an at-will employee and that under the employee policies in force in 1984–85, cause was not required to demote supervisory employees. Gonzales Aff. ¶ 8.

In opposition to defendant's motion, plaintiff alleges that in December 1984 Thompson informed her that her performance appraisal rating for the year would be a G and that Division Manager Charles Herman thereafter assured plaintiff that the G rating would not be changed. Carter Aff. ¶¶ 6, 11. Plaintiff denies that any discrepancies ever existed with respect to her work. *Id.* ¶ 13. Plaintiff claims that she was never told that a further six-month performance appraisal would be performed after she received the G- rating. *Id.* ¶ 18. Plaintiff asserts that unlike white employees, she was not given adequate time to disprove the discrepancies Moccia had detected, that her personal log book was "confiscated" while she was on vacation in June 1985 making it impossible for her to respond to the accusations and that Moccia refused her request to stay at her desk after her scheduled work hours in order to review her records. *Id.* ¶¶ 14–16, 19. Finally, plaintiff names three AT & T supervisors who she states told her that no demotion would occur without just cause. *Id.* ¶ 26.

On August 22, 1985 plaintiff filed a complaint with the New York State Division of Human Rights ("DHR") alleging employment discrimination on the basis of age, race and color. Cutlip Aff., Exh. A. Plaintiff claims that a "supervisory employee" at AT & T told her that her only option was to file a complaint with DHR. Carter Aff.

---

**2.** The Performance Appraisal bearing the G-rating was signed by Mullen and Richard Moccia on January 1, 1985 and by Division Manager Charles Herman on February 21, 1985. The Performance Appraisal does not bear plaintiff's signature on the signature line designated "Employee." Moccia Aff., Exh. A.

¶ 29. DHR notified the Equal Employment Opportunity Commission ("EEOC") of Carter's complaint. Cutlip Aff., Exh. B.

On March 9, 1988 DHR held a fact-finding conference in which Thompson, Moccia, Mullen, McGuffy, Michael R. Dacey, an attorney for AT & T, and plaintiff participated. *Id.*, Exh. C. On September 29, 1988 DHR issued a finding of no probable cause. *Id.*, Exh. E. On September 30, 1988, after reviewing DHR's findings, EEOC found that plaintiff's demotion "was unrelated to unlawful discrimination based on age, race and color" and dismissed her EEOC complaint. *Id.*, Exh. F at 2. On June 2, 1989 EEOC issued plaintiff a Right-to-Sue letter. *Id.*, Exh. G. Plaintiff filed her complaint in this action on September 5, 1989. AT & T filed its answer on December 15, 1989.

The original discovery cutoff date was May 11, 1990. On May 2, 1990 plaintiff in writing requested an extension. On May 8, 1990 the Court granted plaintiff a two-month extension for discovery, from May 11, 1990 to July 11, 1990, with the pretrial order due July 24, 1990 and final pretrial conference to be held July 30, 1990.

Plaintiff conducted limited discovery. Plaintiff's First Set of Interrogatories and First Request for Production of Documents was dated July 2, 1990. Carter Aff., Exh. A.[3]

By letter dated July 10, 1990, plaintiff requested another extension of discovery. On July 11, 1990 the Court denied plaintiff's request. On August 3, 1990 after the close of discovery, AT & T served its responses to plaintiff's July 2 interrogatories and document requests. Carter Aff., Exh. 3. Defendant objected to Interrogatory Nos. 1, 3–6, 9 and 11 which requested *inter alia* the identity of persons involved in giving plaintiff a G– rating, all guidelines regarding employee appraisals both within AT & T and in the industry in general, documents and facts pertaining to administrative or other hearings regarding the G–

rating and all documentation in AT & T's possession concerning plaintiff not previously provided. In answer to Interrogatory No. 9, however, AT & T stated:

> Defendant will make available for inspection and copying by plaintiff the "AT & T Communications Code of Conduct" and "AT & T Communications Manager's Personnel Guide."

Plaintiff seeks a continuance of defendant's summary judgment motion in order to permit her to depose AT & T employees including Moccia and to obtain additional documentary evidence.

The Court heard oral argument on the instant motions on November 2, 1990 and by Memo Endorsed filed November 5, 1990 denied plaintiff's motion to amend her complaint which was made after the close of discovery since plaintiff had shown insufficient reasons other than delay for the motion.

## DISCUSSION

The Court will treat AT & T's motion as one for summary judgment since the parties have presented matters outside the pleadings not excluded by the Court. Fed. R.Civ.P. 12(c).

### 1. Title VII Claim

██ Faced with a motion for summary judgment, plaintiff in a Title VII/disparate treatment action must meet the initial burden of submitting evidence establishing a prima facie case of discrimination, thereby creating a presumption of discrimination which, if unrebutted, would require a verdict in plaintiff's favor. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). The elements of a prima facie case are that plaintiff (1) belongs to a racial minority or is a member of a protected class, (2) was qualified for the job and/or was satisfying the employer's

---

**3.** A cover letter from plaintiff's counsel to AT & T bearing the same date states:

> Upon my receipt of your responses I will be available to take the deposition of your client at the earliest mutually convenient date.
> Carter Aff., Exh. C.

normal requirements in his or her work,[4] (3) that despite those qualifications, plaintiff was discharged or terminated in that position, and (4) that in a typical termination case, plaintiff was replaced by a non-minority worker.[5] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The Second Circuit, recognizing that identification of the protected class is difficult in many cases, held in *Meiri v. Dacon*, 759 F.2d 989, 996 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985), that Title VII does not require proof that plaintiff was replaced by a person outside the protected class.[6]

■ While the burden of persuasion remains on plaintiff throughout a Title VII litigation, *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093, once plaintiff has presented her prima facie case, the burden of production shifts to the employer to articulate some "legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824.[7] If the employer articulates a legitimate, nondiscriminatory reason in rebuttal, plaintiff must be given the opportunity either (1) to show directly that "a discriminatory reason more likely motivated the employer" (i.e., a "mixed motives" case), *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095, or (2) to show indirectly that "the employer's proffered explanation is unworthy of credence," *id.*, and was in fact a pretext for intentional discrimination (i.e. a "pretext" case). *See McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825.[8] A Title VII plaintiff can establish pretext with, for example, direct evidence showing that the employer had a subjective intent to discriminate or with indirect evidence showing that employees of other races with similar employment records were retained while plaintiff was not. *See Kelly v. American Fed'n of Musicians' & Employers' Pension Welfare Fund*, 602 F.Supp. 22, 24–25 (S.D.N.Y.), *aff'd*, 795 F.2d 79 (2d Cir.1985). *See also Rodriguez v. Board of Educ.*, 620 F.2d 362, 367 (2d Cir.1980) (plaintiff's affidavit rebutting employer's stated motives sufficient to create issue of fact for trial).

■ The Supreme Court recently noted that in Title VII actions:

[d]iscovery often will be necessary before the plaintiff can know whether both legitimate and illegitimate considerations played a part in the decision against her.

*Price Waterhouse v. Hopkins*, 490 U.S. 228, 247 n. 12, 109 S.Ct. 1775, 1789 n. 12, 104 L.Ed.2d 268 (1989). Plaintiff in this action has alleged facts which support the first three elements of a prima facie case under Title VII. She concedes, however, that she was replaced as Group Manager by a black woman. Def. Rule 3(g) Stmt. ¶ 12; Pl. Rule 3(g) Stmt. at 4. This deficiency might entitle the employer to summary judgment if plaintiff was unable to adduce any other facts in opposition to the motion which indicated intentional discrimination or pretext. *See Davis v. New York City Health & Hosp. Corp.*, 640 F.Supp. 155, 159 (E.D.N.Y.1986).

■ To make out her claim of intentional discrimination or pretext, plaintiff asserts in her affidavit that "it was clear to me through attitudes, actions, and comments made by Mr. Moccia that he possessed a racial and/or color bias" and that "said bias was the underlying grounds for my demotion." Carter Aff. ¶¶ 21–22. Plaintiff also avers that there is an issue of fact as

4. *See Wade v. New York Tel. Co.*, 500 F.Supp. 1170, 1174 (S.D.N.Y.1980).

5. *See Powell v. Syracuse University*, 580 F.2d 1150, 1154–56 (2d Cir.), *cert. denied*, 439 U.S. 984, 99 S.Ct. 576, 58 L.Ed.2d 656 (1978).

6. *But see Estepa v. Shad*, 652 F.Supp. 567, 571 n. 5 (E.D.N.Y.1987) ("unless a Title VII plaintiff is replaced by a member of a nonprotected class, proof of intentional discrimination appears extremely difficult, if not practically impossible").

7. In cases where plaintiff can present direct evidence of a discriminatory motive, the shifting burdens of proof outlined in *McDonnell Douglas* need not apply. *See Grant v. Hazelett Strip-Casting Corp.*, 880 F.2d 1564, 1568 (2d Cir.1989) (ADEA case).

8. *See also Price Waterhouse v. Hopkins*, 490 U.S. 228, 247 n. 12, 109 S.Ct. 1775, 1789 n. 12, 104 L.Ed.2d 268 (1989) (district court must at some point decide whether a particular Title VII case involves "pretext" or "mixed motives").

to whether she was replaced with a black woman "to cover up a discriminatory demotion." Pl. Rule 3(g) Stmt. ¶ 14. These allegations are not allegations of fact but are of a conclusory nature. As a general rule, a party cannot defeat a motion for summary judgment with conclusory allegations unsupported by facts. *See Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

■ By the same token, however, summary judgment shall only be entered against the non-moving party "after adequate time for discovery." *See Celotex v. Catrett*, 477 U.S. 317 at 322, 106 S.Ct. 2548 at 2552, 91 L.Ed.2d 265 (1986). Subdivision (f) of Rule 56 of the Federal Rules of Civil Procedure,[9] allowing a continuance for discovery, is applied with "a spirit of liberality" as a safeguard against an improvident or premature grant of summary judgment. *See* 10A Wright, Miller & Kane, *Federal Practice & Procedure* § 2740 at 532 (1983).

The Hershman affidavit filed September 12, 1990 complies with the requirements of Rule 56(f) as explained in *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir.1985). Although Carter, like the plaintiff in *Burlington Coat*, waited eight months or more after filing her complaint to serve her first set of interrogatories and document requests, *see id.* at 925, unlike in *Burlington*, there is reason in this case to believe that discovery by Carter's attorneys was insufficient. *Cf. id.* at 926. Plaintiff's interrogatories and document requests were not so "unduly burdensome or expensive," Fed.R. Civ.P. 26(b)(1)(a)(iii), that AT & T was justified in failing to be more responsive. *See Glen Eden Hosp., Inc. v. Blue Cross & Blue Shield of Michigan, Inc.*, 740 F.2d 423, 428 (6th Cir.1984) (district court abused its discretion in denying continuance where defendant "had not been extremely forthcoming in responding to [plaintiff's discovery] requests"). Further-

more Carter has specifically identified at least one AT & T employee she seeks to depose. Accordingly, plaintiff must have the opportunity to conduct limited discovery to support her claim of intentional discrimination or pretext.

For instance, plaintiff has alleged that white employees were treated more leniently when similar discrepancies were detected in their work. Once she has identified the white employees by name, plaintiff must have the opportunity to inquire of AT & T management whether they had knowledge of the transgressions and permitted them to persist. *See Garrett v. City & County of San Francisco*, 818 F.2d 1515, 1518–19 (9th Cir.1987) (error for district court to deny Title VII plaintiff's request for discovery on issue of whether similarly situated firefighters were treated differently on the basis of race). In addition, plaintiff must have the opportunity to depose Moccia in an effort to show that his appraisal of her was not conducted in good faith. *Cf. Sam Wong & Son, Inc. v. New York Mercantile Exch.*, 735 F.2d 653, 678 (2d Cir.1984) (permitting discovery on issue of bad faith in action brought under Commodity Exchange Act). Finally, plaintiff must have the opportunity to determine whether there is any basis for believing that AT & T's motives in selecting a minority replacement were unworthy of credence, e.g., the minority employee could be shown to be lacking in qualifications required by the job description.

Plaintiff must also be permitted limited documentary discovery on the issue of AT & T's standards and procedures governing employee appraisals and demotions. *Cf. Burroughs Wellcome Co. v. Commercial Union Ins. Co.*, 632 F.Supp. 1213, 1222–25 (S.D.N.Y.1986) (granting 60–day continuance to permit insurer to inspect files of insured's broker).

Accordingly, plaintiff is granted a 60–day continuance of the motion for summary

---

9. **"(f) When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." Fed.R.Civ.P. 56(f).

judgment on her Title VII claim, commencing on the date of entry of this opinion, in which to conduct limited discovery on the issue of intentional discrimination or pretext. *Cf. Reeves v. Continental Equities Corp. of America,* 912 F.2d 37, 43 (2d Cir.1990) (district court erred in not affording ERISA plaintiff opportunity to obtain discovery of facts exclusively within employer's knowledge). Defendant is ordered to produce Richard Moccia for deposition at a time mutually convenient to both parties.

**2. Pendent State Claims**

 Plaintiff's second cause of action in the complaint alleges:

That plaintiff's demotion was discriminatory, was motivated by racial prejudice, was unjustified, arbitrary and constituted a wrongful demotion contrary to law and the public policy of the State.

Complaint filed Sept. 5, 1989 ¶ 28. This claim in substance alleges a violation of N.Y. Executive Law § 290 *et seq.* (McKinney 1982 & Supp.1991). *See* Pl. Mem. of Law filed Sept. 12, 1990 at 10–14. Section 297(9) of the Executive Law, however, requires an election of remedies:

Any person claiming to be aggrieved ... shall have a cause of action in any court of appropriate jurisdiction ..., unless such person had filed a complaint hereunder or with any local commission on human rights....

N.Y. Exec. Law § 297(9) (McKinney 1982). Plaintiff's DHR complaint charging employment discrimination in violation of Article 15 of the Executive Law acted as an election of an administrative remedy squarely within the scope of § 297(9). Accordingly, summary judgment dismissing plaintiff's second cause of action is granted as a matter of law. *See Long v. AT & T Information Sys., Inc.,* 733 F.Supp. 188, 197–99 (S.D.N.Y.1990) (collecting cases); *Hunnewell v. Manufacturers Hanover Trust Co.,* 628 F.Supp. 759, 761 (S.D.N.Y. 1986); *Koster v. Chase Manhattan Bank, N.A.,* 609 F.Supp. 1191, 1196–97 (S.D.N.Y. 1985).

The Court denies defendant's motion for summary judgment on plaintiff's third through seventh causes of action without prejudice to renew the motion, on the same papers or otherwise, upon close of the 60–day limited discovery period.

### CONCLUSION

Defendant's motion for summary judgment dismissing the complaint is granted with respect to Count 2. Plaintiff is granted a 60–day continuance, commencing on the date of entry of the opinion, in order to conduct limited discovery into the issues raised by defendant's motion for summary judgment on Count 1. Defendant's motion for summary judgment on Counts 3–7 is denied without prejudice to renew after 60 days.

IT IS SO ORDERED.