Eranze BOOZE, Plaintiff,

v.

SHAWMUT BANK, CONNECTICUT n.k.a. Fleet Bank, Queen Williams and Mary Felice, Defendants.

No. 3:98–CV–00120 (WWE).

United States District Court, D. Connecticut.

July 23, 1999.

Paul Mpande Ngobeni, Hartford, CT, Karen L. DeMeola, Branford, CT, for plaintiff.

Beverly W. Garofalo, Brown Raysman Millstein Felder, Hartford, CT, for defendant.

## *RULING ON MOTION FOR SUMMARY JUDGMENT*

EGINTON, Senior District Judge.

### *INTRODUCTION*

In her five count complaint plaintiff, Eranze Booze, alleges claims against Shawmut Bank, Connecticut, N.K.A. Fleet Bank ("Fleet") for race discrimination pursuant to 42 U.S.C. Section 1981, retaliation pursuant to 29 U.S.C. 29 U.S.C. Section 215(a)(3) intentional infliction of emotional distress, breach of contract and defamation. Each of plaintiff's claims are brought in connection with Fleet's decision to terminate her employment for willful misconduct in May, 1995, and events leading thereto.[1]

Fleet has moved for summary judgment on all counts of the complaint and filed therewith a statement of undisputed material facts, pursuant to the dictates of Local Rule 9(c)(1).[2]

---

1. Although the complaint caption also names Queen Williams and Mary Felice as defendants, neither individual was ever served with the complaint. Fleet, therefore, is the only defendant in this case.

2. Plaintiff did not file an alleged "statement of facts" until after a significant and extended

## STATEMENT OF FACTS

Local Rule 9(c)(1) imposes on the moving party the requirement of annexing to the motion for summary judgment a "separate, short and concise statement of material facts which are not in dispute." Local Rule 9(c)(2) places a parallel burden upon the resisting party to include a "separate, short and concise statement of material facts as to which it is contended that there exists a genuine issue to be tried." Local Rule 9(c)(1) provides that the facts set forth by the moving party in accordance with that Rule shall be deemed admitted unless controverted by the opposing party in accordance with Rule 9(c)(2). Local Rule 9(c)(3) makes clear that these requirements are in addition to those of Fed. R.Civ.P. 56.

The purpose of a Rule 9(c)(2) Statement is to make affirmative statements which will aid and inform the Court. The absence of a timely Rule (c)(2) Statement, (later filed in noncompliance with the Local Rules), fails to serve this purpose. This alone would be grounds for a grant of summary judgment. *See Dusanenko v. Maloney,* 726 F.2d 82, 84 (2d Cir.1984) (no filing in compliance with local rule; grant of summary judgment); Trzaskos ex rel. Trzaskos *v. St. Jacques,* 39 F.Supp. 2d 177 (D.Conn.1999) (granting summary judgment); *Kusnitz v. Yale Univ. Sch. Of Medicine,* 1998 WL 422903 (D.Conn. July 16, 1998) (granting summary judgment); *Scianna v. McGuire, et al.,* 1996 WL 684400 (D.Conn. March 21, 1996) (granting summary judgment). In the interests of judicial fairness, however, the Court will consider the issues in this case and decide the case on the merits. However, all facts set forth in defendant's complying Rule 9(c)(1) statement will be deemed admitted by plaintiff for purposes of the decision on this Motion.

The plaintiff is an African American woman who commenced employment with Connecticut National Bank in 1989. She testified that during the course of her employment she believed she developed a reputation for being a "troublemaker, an aggressive person, a person with an attitude." Indeed, the record is replete with this type of behavior towards her co-workers and supervisors.

Three of plaintiff's supervisors issued performance reviews that addressed the plaintiff's interpersonal skills and conflict resolution. The plaintiff's review for the period January, 1990, through January, 1991, rated the plaintiff's performance as "1" on a scale of zero to five. The plaintiff's supervisor at that time observed that plaintiff needed to "strive to improve in this area. She has on occasion let her personal feelings effect [sic] her performance."

Plaintiff's review for the period May, 1991, through May, 1992, rated her performance in interpersonal skills as "2" out of five. The supervisor wrote that the plaintiff "must learn to work better with others within her area. She does not deal with conflict well. She needs to control her temper better."

Plaintiff's performance review for the period April 1, 1993, through April 1, 1994, included the comment that her "ability to deal with conflict can improve."

Plaintiff testified at her deposition that, regardless of these three performance reviews (each done by a different supervisor), she did not think that she had any need to improve her interpersonal and communication skills or to learn to work better with people. She determined to not make any effort to improve her performance in these areas.

In January, 1995, plaintiff experienced two instances of late overtime pay. In the first instance, she "insisted" that her supervisor issue an immediate "transmittal", which could be cashed at the bank like any

---

period after which it should have been filed had passed. More telling, the document does not comply with the requirements of Local

Rule 9(c)(2). Accordingly, the Court will not consider that document in issuing this Ruling.

paycheck. He acceded to her demand. She acknowledged that the supervisor probably felt that she was being aggressive, disruptive or disrespectful. Following his interaction with the plaintiff concerning the status of her overtime pay, her supervisor contacted the Human Relations Department about the plaintiff.

As a result, plaintiff was called for a meeting with Veronica Leonard of Human Resources. Ms. Leonard is also African–American. She counseled plaintiff about how to handle difficulties with plaintiff's supervisors and clarified the bank's policies and procedures on unprofessional conduct.

A second problem with late overtime checks occurred and plaintiff reacted similarly, this time to her supervisor, Queen Williams, another African–American woman. Ms. Williams gave plaintiff money out of her own pocket after plaintiff stated that she needed the money to get home. Plaintiff acknowledged that, because of a host of prior incidents, Ms. Williams had labeled her as "aggressive, loud, boisterous, just keeping things going into trouble."

In Ms. Williams' judgment, plaintiff engaged in unprofessional conduct that was loud and disruptive to the department. Accordingly, Ms. Williams contacted the Human Resources Department concerning the plaintiff's conduct.

In April, 1995, Ms. Williams and Mary Felice of the Human Resources Department met with plaintiff to issue her a written warning and advised her that it concerned being loud and disruptive in the department. The written warning stated that plaintiff's conduct had been "unprofessional" and that she had become "loud and disruptive in the department." The letter also reiterated the bank's policies on unprofessional conduct. Plaintiff was warned that "continuing the above behavior will warrant your immediate termination." With a look on her face throughout the hearing, plaintiff showed she was upset by it. The plaintiff described it as a "mean

look" that basically conveyed "don't say nothing to me at this moment." With the mean look on her face, plaintiff testified that she stated during the meeting "what goes around comes around" by which she meant "you'll get yours in return." Plaintiff refused to sign the written warning.

Plaintiff acknowledged that Ms. Williams felt that the statements were threatening. In her affidavit Ms. Williams averred that the statements were indeed threatening in nature and that she was in fear of her safety as a result of plaintiff's actions at that meeting.

Because of plaintiff's conduct, Ms. Felice terminated the meeting and reported what had happened at the meeting to Veronica Leonard, Ms. Felice's supervisor.

In May, 1995, Ms. Leonard met with plaintiff. Upon being told to sit down, plaintiff refused to do so, testifying that "I didn't like the way she said it to me."

As Ms. Leonard averred in her affidavit, in Ms. Leonard's judgment, plaintiff conducted herself in an inappropriate, disruptive and insubordinate fashion during the meeting. Ms. Leonard found plaintiff to be so volatile and angry that she was concerned for the safety of the other employees in the department, including a pregnant woman. Accordingly, Ms. Leonard made the decision that plaintiff's conduct warranted immediate termination. Ms. Leonard advised the plaintiff of this and that the reason for the termination was "willful misconduct."

The present litigation then ensued.

## LEGAL ANALYSIS

### I. The Standard of Review

In a motion for summary judgment the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). *See also Anderson v. Liberty Lobby,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (plaintiff must

present affirmative evidence in order to defeat a properly supported motion for summary judgment).

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23, 106 S.Ct. 2548. *Accord, Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d.Cir.1995) (movant's burden satisfied by showing if it can point to an absence of evidence to support an essential element of nonmoving party's claim).

The court is mandated to "resolve all ambiguities and draw all inferences in favor of the nonmoving party. . . ." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.), *cert. denied*, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). If the nonmoving party submits evidence which is "merely colorable", or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.

Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 247–48, 106 S.Ct. 2505 (emphasis in original).

## II. *The Standard As Applied*

### A. *42 U.S.C. § 1981*

■ Plaintiff's first cause of action is for racial discrimination brought pursuant to 42 U.S.C. Section 1981. In order to set forth a *prima facie* case of such discrimination, plaintiff must set forth genuine issues of material fact as to four elements. First, she is a member of the protected class; (2) she was performing her job satisfactorily; (3) plaintiff was terminated; and (4) the circumstances surrounding the termination give rise to an inference of discrimination on the basis of plaintiff's membership in that class. *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997); *Bloom v. Jewish Home for Elderly of Fairfield County, Inc.*, 44 F.Supp.2d 439, 441 (D.Conn.1999).

■ Although the burden on the plaintiff to make a *prima facie* case is *de minimis*, plaintiff has failed to do so for two reasons. First, she was not performing her job satisfactorily. She was continuously disruptive to her entire department, including her co-workers and supervisors, including persons of her own race. She acknowledged in her deposition that she was "seen as a troublemaker, an aggressive person, a person with an attitude." After her first session with an African–American Human Resources counselor, plaintiff determined not to change her attitude. Again, when her African–American supervisor sent her to Human Resources for the repetition of the same disruptive behavior, plaintiff was again told of the bank's policies regarding unprofessional conduct in the work place. Plaintiff was also given a written warning at this meeting that continuing this behavior would result in her immediate termination. Plaintiff refused to sign the letter of warning. At yet a third meeting, her attitude

was such that she was terminated for "willful misconduct". For these reasons, then, plaintiff fails to set forth her *prima facie* case under element number two.

■ She also has failed to set forth genuine issues of material fact as to prong four, as there was no inference of discrimination in her termination. Her deposition testimony concerning the circumstances of her termination and her disciplinary warnings prior to it demonstrates no inference of discrimination, especially since the majority of her disciplinarians were African–American. *See Toliver v. Community Action Commission*, 613 F.Supp. 1070, 1074 (S.D.N.Y.1985), *aff'd*, 800 F.2d 1128 (2d Cir.), *cert. denied*, 479 U.S. 863, 107 S.Ct. 217, 93 L.Ed.2d 146 (noting that because some of the decision makers were members of the same protected class as plaintiff, inference of discrimination becomes attenuated).

In *Bloom v. Jewish Home for the Elderly of Fairfield County, Inc.*, 44 F.Supp.2d 439 (D.Conn.1999), the plaintiff was terminated for serious performance problems concerning patient treatment and interaction with other staff. This Court held that plaintiff failed to establish a *prima facie* case of discrimination and granted summary judgment in favor of the defendant. This Court's decision in *Bloom* is on all fours with the facts in this case.

Summary judgment will be granted on the 42 U.S.C. Section 1981 claim.

### B.  *28 U.S.C. § 215(a)(3)*

Plaintiff next alleges that she had engaged in the exercise of protected rights under the Fair Labor Standards Act, 28 U.S.C. § 201, *et seq.* ("FLSA"). Plaintiff specifically sets forth her claim under 28 U.S.C. Section 215(a)(3) which provides in relevant part that is shall be unlawful "to discharge or in any other manner discriminate against any employee because such

employee has filed any complaint or instituted any proceeding under or related to this chapter."

Construing the unambiguous language of this Section, the Second Circuit has held that the retaliation provisions of the Equal Pay Act ("EPA")[3] do not encompass "informal workplace complaints" or "complaints made to a supervisor", as do the filing of formal complaints or instituting a proceeding [under the FLSA or EPA]. *Lambert v. Genesee Hospital*, 10 F.3d 46, 55 (2d Cir.1993). In *Lambert*, the court held that "oral complaints to a supervisor that an employee was being paid less than the [employee] thought she should have been" do not rise to the level of a formal complaint under EPA. *Id.* at 56. *Accord, Johns v. Cianbro Corp.*, 1999 WL 200699 at *2 (D.Conn. March 29, 1999) (granting motion to dismiss on the FELA /EPA count because, as a matter of law, a "complaint to one's employer, by itself, is insufficient to state a claim for retaliation.")

■ Since plaintiff never made a complaint of any kind to either the Connecticut Department of Labor or the U.S. Department of Labor, based on the clear precedent in this Circuit, plaintiff's "informal workplace complaints" regarding the timing of her overtime pay do not constitute protected activity on which to base a claim for retaliation pursuant to 28 U.S.C. Section 215(a)(3). Summary judgment will be granted in favor of Fleet on this claim.

### C.  *The State Law Claims*

■ Inasmuch as the Court will grant summary judgment on both federal claims, it will not maintain jurisdiction over the supplemental state claims. *See*, 28 U.S.C. § 1367(c)(3).

### *CONCLUSION*

Plaintiff has set forth no facts that could affect the outcome of this suit under the

---

**3.**  The EPA is an amendment to the FLSA and falls under Section 215(a)(3) of the FLSA. The

analysis is identical. *Lambert,* 10 F.3d at 55.

governing law. The Motion for Summary Judgment [Doc. No. 21] is GRANTED. The Clerk is directed to close this case.

SO ORDERED.