**Warner PAUL, Plaintiff,**

v.

**F.W. WOOLWORTH CO., a corporation of the State of New York, Defendant.**

**Civ. A. No. 91–453 MMS.**

United States District Court, D. Delaware.

Dec. 30, 1992.

---

Jerome M. Capone, Wilmington, DE, for plaintiff.

Nancy N. Doughten, of Cooch and Taylor, P.A., Wilmington, DE, for defendant.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

In his amended complaint, the plaintiff, Warner Paul, claims he was denied promotion in violation of his civil rights. Docket Item ("D.I.") 10. His claims arise under both Title VII and section 1981. 42 U.S.C. §§ 1981, 2000e–2(a)(2) (1988). Under Title VII, the plaintiff has advanced two legal theories of discrimination, a disparate impact theory and a disparate treatment theory. The defendant, F.W. Woolworth Co. ("Woolworth"), has moved for summary judgment on all of the plaintiff's

claims.[1] This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343 (1988). For the reasons which follow, defendant's motion for summary judgment will be granted.

## I. *Facts*

Defendant's store at the Concord Mall has approximately sixty-four or sixty-five employees. D.I. 25 at A–32. Plaintiff has worked for the defendant as a cook in its store at the Concord Mall since December 2, 1973. Sometime in 1979 or 1980, plaintiff became head cook when the previous head cook departed. D.I. 23 at A–16.

Plaintiff described his duties as cook by saying, "I do the ordering. I do the prep, the basic cooking." D.I. 25 at A–1. Doing "prep" requires plaintiff to insure that proper inventory is available, including food and other supplies. *Id.* at A–2. Plaintiff also performs various tasks such as plumbing or electrical work. *Id.* at A–2, A–9. Currently, he works four or five hours a day, seven days a week and makes $7.70 per hour. *Id.* at A–2; D.I. 26 at A–5.

The plaintiff's relationship with the defendant underwent certain changes in January of 1987. At that time, the defendant closed the cafeteria in which the plaintiff had been working and transferred him to a coffee shop, referred to as a restaurant. D.I. 26 at A–1—A–2; D.I. 23 at A–15.

At the time of the transfer, the defendant asserts the plaintiff requested he only be scheduled to work half days, apparently to facilitate a second, part-time job. The personnel manager, Gloria Reed, testified that "Warner Paul ... requested, when the cafeteria closed, to work half-days." D.I. 23 at A–2. The plaintiff disputes this testimony. When the plaintiff was asked in deposition if he requested his current schedule, he stated he had not made such a request. D.I. 25 at A–3.

After the shuffling which occurred in 1987, and the promotion to head cook, the plaintiff's relationship with the defendant remained static until 1989. On May 12, 1989, the defendant hired Robin Roberts as assistant restaurant manager. D.I. 23 at A–5. Ms. Roberts is a black female who was hired through an advertisement in a local paper and worked for defendant until August 11, 1989. *Id.* The two subsequent assistant restaurant managers, Gayla Hetrick and Margaret Mutro, are white females who were promoted from within the company. *Id.* Ms. Hetrick worked as assistant manager from August 28, 1989 until April 1, 1990, and Ms. Mutro filled the position from April 1, 1990, until the present. *Id.*[2]

As assistant managers of the restaurant, these women performed a variety of tasks. According to the current assistant manager, Ms. Mutro, the assistant manager has "to do more than a manager would do." D.I. 25 at A–8. The specific tasks include ordering from the warehouse, reading cash registers and taking inventory. D.I. 25 at A–8. According to the plaintiff, the assistant manager must also fill in for the manager in the latter's absence. D.I. 23 at A–10. In May of 1989, the assistant manager made $5.50 per hour. D.I. 26 at A–5. Ms. Reed, the personnel manager, pointed out in her deposition testimony that although the starting wage would be approximately $5.00 per hour, there was a potential for increase depending upon the duration of employment or the employee's accomplishments. D.I. 25 at A–26—A–27.

Plaintiff did not apply for the position of assistant manager. The failure to apply, however, apparently resulted from the promotion process at Woolworth. Openings are not posted. D.I. 25 at A–16. The manner in which the promotional process operates at the store is not clear. Ms. Reed, who has never posted an open position in her twenty years with personnel, stated that employees who are interested in a position "must come and let us know,

---

1. The defendant has also asked that plaintiff's request for jury trial and punitive damages be denied if the section 1981 claim is dismissed. The plaintiff does not dispute that absent a section 1981 claim he has no right to a jury trial, nor punitive damages.

2. The position of assistant manager is currently vacant due to Ms. Mutro's absence on sick leave. D.I. 25 at A–54.

because we don't know what they are thinking...." D.I. 25 at A–17.

The store manager, Charles Rice, stated that he makes a decision by first looking to an affirmative action chart and a wage progression chart. D.I. 25 at A–34. He then consults with three people, Ms. Reed and one of her assistants for potential promotions from within the Concord Mall store and the defendant's district manager for potential transfers. D.I. 25 at A–35—A–36. In accordance with company policy, applicants from outside the company will only be solicited if no suitable candidate is available within the company. D.I. 25 at A–36. With respect to the plaintiff, Mr. Rice remarked that plaintiff had been considered by management for a management position at one time. D.I. 25 at A–38.

After the decision was made to hire Ms. Roberts, the plaintiff filed a charge of discrimination with the Delaware Department of Labor on May 22, 1989. D.I. 23 at A–6. The charge of discrimination listed both the manager's and assistant manager's positions as unfairly denied. D.I. 26 at A–33. The Delaware Department of Labor forwarded the case to the Equal Employment Opportunity Commission (the "EEOC"). D.I. 26 at A–37. The EEOC determination letter found probable cause that discrimination had occurred. *Id.* at A–34.

## II. *Summary Judgment*

The defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Rule 56 requires the Court to enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. 56(c).

An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

■ Where there is a dispute, the non-moving party must place in the record sufficient evidence for the Court to find a genuine issue of material fact.

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case; and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The standard is not whether there is literally no evidence for the party who has not moved, nor is it enough for the non-moving party to have provided a scintilla of evidence supporting its position. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252, 106 S.Ct. at 2512. The Court will enter summary judgment if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

If a non-moving party fails to meet its burden, a rational trier of fact would not be able to find for the non-moving party, and the Court should enter summary judgment against it. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). It is not the Court's task to replace the rational trier of fact and to resolve questions about which genuine issues exist. The Court will only enter summary judgment if no rational trier of fact could weigh the evidence and find for the nonmoving party. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511.

Addressing summary judgment in discrimination cases, the United States Court of Appeals for the Third Circuit has explained a court's role is "to determine whether, upon viewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir.1987).

### III. *Analysis*

#### A. Title VII

The pertinent section of Title VII states, It shall be an unlawful employment practice for an employer—

. . . . .

(2) to limit segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex or national origin.

42 U.S.C. § 2000–e(a)(2) (1988). In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804, 93 S.Ct. 1817, 1824–1825, 36 L.Ed.2d 668 (1972), the Supreme Court announced the mode of analysis for Title VII claims. The analysis requires plaintiff to establish a prima facie case, followed by the employer's burden to show a legitimate non-discriminatory reason, and ending with the plaintiff's ultimate burden to show the employer's proffered reason was nothing more than pretext. *Id.* "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

At the summary judgment stage, the United States Court of Appeals for the Third Circuit has found summary judgment appropriate if the defendant has shown "that the plaintiff is unable to establish a prima facie case of discrimination, or, if the plaintiff has successfully established a prima facie case, the defendant may win summary judgment by showing that the plaintiff could not produce evidence of pretext to rebut an assertion of nondiscriminatory reasons...." *Jalil v. Avdel Corp.*, 873 F.2d 701, 707 (3d Cir.1989), *cert. denied*, 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990).

The Supreme Court and the United States Court of Appeals for the Third Circuit have both admonished against obsession with the shifting burdens analysis. The Court of Appeals has warned against, "excessive preoccupation with the various formulae used in an employment discrimination case [because] they are simply tools designed to aid in the analysis of evidence. The ultimate question remains whether the defendant has discriminated. The presumptions and shifting burdens are merely an aid—not ends in themselves." *Goodman v. Lukens Steel Co.*, 777 F.2d 113, 130 (3d Cir.1985), *aff'd* 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987); *see also McDonnell Douglas*, 411 U.S. at 802, n. 13, 93 S.Ct. at 1824, n. 13 (noting that elements of prima facie case may vary depending on facts); *Roebuck v. Drexel University*, 852 F.2d 715, 726 (3d Cir.1988) (adjusting prima facie elements in case involving denial of tenure); *Jackson v. United States Steel Corp.*, 624 F.2d 436, 440 (3d Cir.1980) (stating that elements of prima facie case as announced in *McDonnell Douglas* need not be present in every case).

Specifically addressing the establishment of a prima facie case, the Court of Appeals has stated,

courts need not, and should not, stubbornly analyze all Title VII factual scenarios through the *McDonnell Douglas* formula. Instead, courts must be sensitive to the myriad of ways such an inference can be created. Simply stated, a Title VII plaintiff has established a prima facie case when sufficient evidence is offered such that the court can infer that if the employer's actions remain unexplained, it is more likely than not that

such actions were based on impermissible reasons.

*Equal Employment Opportunity Commission v. Metal Service Co.*, 892 F.2d 341, 348 (3d Cir.1990) (citations omitted).

### 1. Disparate Impact

■ In describing the prima facie case required under a disparate impact theory, the United States Court of Appeals for the Third Circuit has stated, "In order to establish a prima facie case of disparate impact discrimination, a plaintiff is required to demonstrate that application of a facially neutral standard has resulted in a significantly discriminatory hiring pattern." *Newark Branch, NAACP v. Town of Harrison*, 940 F.2d 792, 798 (3d Cir.1991). In another formulation, the Court of Appeals has said "[a] disparate impact violation is made out when an employer is shown to have used a specific employment practice, neutral on its face but causing substantial adverse impact on a protected group. . . ." *Metal Service Co.*, 892 F.2d at 346. Pursuant to these opinions, plaintiff must first provide a "specific employment practice" and, second, must show a "significantly discriminatory" hiring impact. Plaintiff has shown the former element, but not the latter.

As a "specific employment practice", plaintiff has identified "the policy of not posting promotional opportunities, and permitting the store manager to identify and select promotional candidates." D.I. 24 at 18. In her deposition, the personnel supervisor at the defendant's store confirmed that jobs have not been posted during her twenty year tenure with the personnel department. D.I. 25 at A–15. In addition, the store manager testified that applications for positions are not solicited and a management team usually decides who would be qualified and approaches the prospective employee. D.I. 25 at A–35—A–37.

This promotional process suffices as a "specific employment" practice. Defendant does not take issue with the existence of this promotional system at Woolworth's Concord Mall store, and has not raised an issue with respect to these facts. Nor does defendant dispute that the system constitutes a "specific employment practice" which could operate to discriminate against minorities. Defendant's concessions are consistent with the provision of Title VII and the case law which interprets that provision. 42 U.S.C. § 2000e–2(a)(2). *Connecticut v. Teal*, 457 U.S. 440, 448–449, 102 S.Ct. 2525, 2531–2532, 73 L.Ed.2d 130 (1981) (finding administration of an examination was a barrier to achieving equal employment opportunities for employment or promotion); *Griggs v. Duke Power Co.*, 401 U.S. 424, 430, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1970) ("Under the Act, practices, procedures, or tests neutral on their face, and even neutral in terms of intent, cannot be maintained if they operate to 'freeze' the status quo of discriminatory employment practices."); *Green v. USX Corp.*, 843 F.2d 1511, 1521–1525 (3d Cir. 1988) (finding disparate impact analysis appropriately applied to a multicomponent hiring system that utilizes subjective criteria).

■ As for the second element of his prima facie case, plaintiff has not placed in the record anything remotely approaching a "significantly discriminatory" hiring impact. In determining what constitutes an unlawful impact, the Supreme Court has explained,

> The 'proper comparison [is] between the racial composition of [the at-issue jobs] and the racial composition of the qualified ... population in the relevant labor market.' It is such a comparison—between the racial composition of the qualified persons in the labor market and the persons holding the at-issue jobs—that generally forms the proper basis for the initial inquiry in a disparate impact case.

*Wards Cove Packing Co. v. Antonio*, 490 U.S. 642, 650–651, 109 S.Ct. 2115, 2121, 104 L.Ed.2d 733 (1988) (quoting *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 308, 97 S.Ct. 2736, 2742, 53 L.Ed.2d 768 (1977)) (citation omitted).

The analysis of a disparate impact claim often focuses upon statistical evidence pertaining to the relevant work force and the employer's work force. *See Town of Har-*

*rison*, 940 F.2d at 799–801 (upholding as applicable labor force district court's use of the county, which had a civilian labor force of 391,612 workers of whom 130,397, or 33.3% were African–Americans); *see also Newark Branch, NAACP v. Township of West Orange*, 786 F.Supp. 408, 432 (D.N.J. 1992) (finding relevant work force to be area within commuting distance of town and 33% of work force to be African–American). The lack of extensive statistical data is not, however, necessarily fatal to a plaintiff's claim. Courts have found disparate impact violations based upon much smaller comparisons, when a case allows for a simpler inquiry. *Garland v. USAir, Inc.*, 767 F.Supp. 715, 726 (W.D.Pa.1991) (faced with airline's pilot hiring practices, the court relied upon "qualified black applicant pool" consisting of the number of qualified black applicants which had been considered by the airline).

In the plaintiff's case, however, the position of assistant manager appears to be one which could draw qualified applicants from a wide range of potential employees. The record reflects the defendant recruited assistant managers from within their regional stores and, in at least one instance, through a newspaper advertisement. D.I. 26 at A–7—A–8. Plaintiff has not placed in the record any facts with respect to the racial composition of defendant's work force within its regional stores, much less a broader potential labor pool.

Because of the record deficiencies, the Court is unable to make the "proper comparison between the racial composition of [the at-issue jobs] and the racial composition of the qualified ... population in the relevant labor market." *Hazelwood Sch. Dist.*, 433 U.S. at 308, 97 S.Ct. at 2742. Without any information on the pertinent labor force, the Court has no facts upon which to make a comparison and the record lacks "sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ.*, 829 F.2d at 440. Defendant's motion for summary judgment will be granted on plaintiff's disparate impact claim.

### 2. *Disparate Treatment*

Under a disparate treatment theory, a plaintiff must first establish certain prima facie elements. As recently articulated by the United States Court of Appeals for the Third Circuit, "[t]he plaintiff must prove by a preponderance of the evidence that he is a member of a minority; that he applied for, is qualified for and was rejected for the position sought, and that nonmembers of the protected class were treated more favorably." *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 170 (3d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 956, 117 L.Ed.2d 124 (1992).

Plaintiff has two difficulties in presenting a prima facie case. First, plaintiff never applied for the assistant manager's position. Second, the only promotion decision specifically alleged in plaintiff's complaint occurred on May 12, 1989. D.I. 10 at ¶ 11. Ms. Robin Roberts, who filled the position at that time, is an African–American. Neither of these apparent flaws are necessarily fatal to the plaintiff's prima facie case.

#### a. Failure to Apply

■ With respect to plaintiff's failure to apply for the position of assistant manager, the United States Court of Appeals for the Third Circuit has stated that "the failure to formally apply for a job opening will not bar a Title VII plaintiff from establishing a prima facie claim of discriminatory hiring, as long as the plaintiff made every reasonable attempt to convey his interest in the job to the employer." *Metal Service Co.*, 892 F.2d at 348. In this case, plaintiff made no attempt to convey his interest in the position to the defendant. D.I. 23 at A–8. On the other hand, the defendant had no formal mechanism for soliciting applications for open positions and there is an issue of fact as to whether an informal mechanism existed.

The personnel supervisor of defendant's store, Ms. Gloria Reed, admitted that the policy in the store was not to post vacant positions. D.I. 25 at A–16. In place of posting, Ms. Reed explained her understanding of the promotional process by saying, "if somebody is interested in something, when they are hired ... you tell

them that if something would come open that they are interested in, they must come and let us know, because we don't know what they are thinking and anybody could be considered for it." D.I. 25 at A–16—A–17.[3]

The personnel supervisor's explanation, however, is contradicted by the deposition of Marie Thompson who was promoted to the position of food manager, despite having never mentioned to management her interest in the position. D.I. 25 at A–59. Moreover, plaintiff himself assumed any application would be futile because management "had ... already picked.... It's like they know who they wanted." D.I. 23 at A–8.

Because the defendant maintained a policy under which openings were not posted, and because the record reflects at least one promotion which occurred in the absence of any application, there is an issue of material fact as to whether application was required. For this reason, the Court is unwilling to state as a matter of law that plaintiff's failure to apply for the assistant manager's position prevents him from stating a claim under Title VII.

### b. Hiring of a Minority

■ As plaintiff points out, the fact that another minority member happened to fill the position which plaintiff sought has been held not to preclude a Title VII claim. As the United States Court of Appeals for the Tenth Circuit has said, "that a member of a protected class was hired or promoted in place of a Title VII plaintiff has repeatedly been held insufficient to insulate the employer from liability." *Pitre v. Western Elec. Co., Inc.*, 843 F.2d 1262, 1272 (10th Cir.1988); *see also Cygnar v. City of Chicago*, 865 F.2d 827, 842 (7th Cir.1989) (stating "the replacement of minority employees by individuals of the same race does not preclude a finding of discriminatory intent."); *DeLesstine v. Fort Wayne State Hosp.*, 682 F.2d 130, 133 (7th Cir.), *cert. denied*, 459 U.S. 1017, 103 S.Ct. 378, 74 L.Ed.2d 511 (1982) (because focus of Title VII is individual, hiring of a woman does

not preclude a black plaintiff's prima facie case); *Brooks v. Hilton Casinos*, 714 F.Supp. 1115, 1118 (D.Nev.1989) (replacement of plaintiff by an employee of the same gender does not prevent finding of gender discrimination).

In this context, without more, the fact that a black female was hired when plaintiff could have been promoted does not, by itself, dispel any inference of discrimination which may otherwise arise. Such a situation could, in fact, easily cloak discriminatory intent. An employer could simply promote or hire only overqualified minorities, while failing to hire or promote qualified minorities who would have been treated differently but for their minority status. The issue under Title VII is not the ethnicity of the person who gets the job, but is whether or not this plaintiff, "but for his race", would have been promoted or hired. *Lewis v. University of Pittsburgh*, 725 F.2d 910, 914–915 (3d Cir.1983), *cert. denied*, 469 U.S. 892, 105 S.Ct. 266, 83 L.Ed.2d 202 (1984).

Although the hiring of a black female does not necessarily preclude plaintiff from stating a case of discrimination, summary judgment will still be entered unless "there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple University*, 829 F.2d at 440.

### c. Lack of an Inference of Discrimination

■ In this record, the plaintiff has not shown any direct evidence of discrimination. As indirect evidence, the plaintiff has shown a highly subjective promotion policy utilized by the defendant. The Third Circuit appellate court has held "that word-of-mouth hiring which results in a relatively small number of minority applicants is circumstantial evidence which helps to establish a reasonable inference of an employer's discriminatory treatment of blacks as a class." *Metal Service Co.*, 892 F.2d at 350. *See also, Grano v. Dept. of Dev.*, 699 F.2d 836, 837 (6th Cir.1983) ("Courts have fre-

---

**3.** The record contains at least one instance in which an employee approached management to express an interest in promotion. D.I. 25 at A–16.

quently noted that subjective evaluation processes intended to recognize merit provide ready mechanism for discrimination." (citations omitted)). The Court of Appeals held only that such a process "helps to establish" a reasonable inference of discrimination. The Court did not say such a process alone establishes such an inference. Courts which have found such processes discriminatory have relied upon the existence of other evidence which contributes to an inference of discrimination. *See e.g., Pitre v. Western Elec. Co., Inc.*, 843 F.2d 1262, 1271–72 (relying upon past discriminatory attitudes of decisionmakers, decisionmakers' involvement with past discrimination, and presence of specific discriminatory incidents).

The plaintiff has presented no other evidence of discrimination. The record contains only a suspicious promotional process and a hard working, often praised employee. While plaintiff has alleged an underrepresentation of minorities at the management level, he has not provided any grounds upon which the Court could make a comparison. Nor has plaintiff shown that the three women hired or promoted to the assistant manager position were not qualified, or were less qualified than he.

This conclusion, combined with the fact that one of the women employed as assistant manager was an African–American, requires this Court to find that "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. On the record before the Court, there is not "sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir.1987). For this reason, the defendant's motion for summary judgment will be granted with respect to the plaintiff's claim of discrimination under Title VII.

**B. Denial of Promotion—Section 1981**

■ Section 1981 states, in part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts...." 42 U.S.C. § 1981. The jurisprudence of section 1981 changed with the United States Supreme Court opinion in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). In *Patterson*, the Supreme Court found that a section 1981 claim could only be made with a showing of a "new and distinct relation between the employee and the employer". *Patterson*, 491 U.S. at 185, 109 S.Ct. at 2377. While *Patterson* changed the nature of section 1981 claims, it also changed the relationship between section 1981 claims and Title VII claims.

At one time, the law within the Third Circuit held that the legal standards governing Title VII and § 1981 were interchangeable. *Roebuck v. Drexel Univ.*, 852 F.2d at 738; *Gunby v. Pennsylvania Elec. Co.*, 840 F.2d 1108, 1115, n. 9 (3d Cir.1988), *cert. denied sub nom. Pennsylvania Elec. Co. v. Gunby*, 492 U.S. 905, 109 S.Ct. 3213, 106 L.Ed.2d 564 (1989); *Molthan v. Temple University*, 778 F.2d 955, 961 (3d Cir.1985); *Lewis v. Univ. of Pittsburgh*, 725 F.2d at 915. Because of the Supreme Court's opinion in *Patterson*, that proposition is no longer completely accurate.

In *Lewis*, and those cases which followed it, the shifting burdens announced by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* had been applied to section 1981 claims. The requirement that a plaintiff show the existence of a "new and distinct relationship" under section 1981 presents an additional legal hurdle, but does not eliminate the plaintiff's burden to show that the denial of the "new and distinct relationship" was discriminatory. Plaintiff must still show discrimination, and may still utilize the shifting burdens analysis to do so.[4]

---

**4.** In section 1981 claims in which *Patterson* has not been an issue, the Court of Appeals has still applied the *McDonnell Douglas* analysis. *See Chauhan v. M. Alfieri Co.*, 897 F.2d 123, 126 (3d Cir.1990) (applying *McDonnell Douglas* analysis in section 1981 claim involving commercial lease).

**1164**

Because under section 1981 a plaintiff must still show discrimination, the posture of plaintiff's case does not require this Court to address the validity of plaintiff's claim under the "new and distinct relationship" test announced in *Patterson*. Even if the defendant and plaintiff would have had a "new and distinct relationship", this does not mean that the denial of that relationship was discriminatory. The absence of discrimination has already been discerned in the analysis employed under the Title VII claim.

IV. *Conclusion*

For the forgoing reasons, defendant's motion for summary judgment will be granted. An appropriate order will issue.